### ISRAEL MOSES, *Adm'r, vs.* CLARA WILKINSON.
#### JANUARY 21, 1960.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

254

PAOLINO, J. This bill in equity was brought by the administrator of the estate of Margaret Best, late of the town of North Providence, deceased. The bill prays that the respondent be declared a trustee of certain funds for the benefit of said estate and for other relief. After a hearing in the superior court on bill, answer and proof, a final decree was entered denying and dismissing the bill of complaint. The cause is before us on the complainant's appeal from such decree.

The pertinent allegations in the bill are that on the day of her death decedent had two separate bank accounts standing in the names of decedent and respondent jointly, payable to either or the survivor; that she was ill at the time she caused respondent's name to be added to the accounts; that respondent's name had been added for the convenience of decedent; that she never intended to give respondent any of the moneys and never relinquished her ownership thereof; that none of such moneys ever belonged to respondent; and that they belonged to decedent during her lifetime and to her estate after her decease.

The respondent in her answer denied that her name had been added to the accounts for the convenience of decedent. She alleged that during her lifetime decedent divested herself of exclusive ownership and control over the moneys in the two bank accounts and vested such ownership and control jointly in herself and respondent and that, accordingly, upon decedent's death she became the sole owner of the moneys.

At the time of her death on November 7, 1957 decedent was about seventy-one years of age and left neither husband nor children surviving. She had stopped working two or three years previous to her decease, lived alone, and was receiving a pension. Her heirs and next of kin included two sisters, Mrs. Anna McKay and Mrs. Alice Jordan, and

three nieces who were the foster children of Mrs. Jordan. The respondent Clara Wilkinson is one of Mrs. Jordan's foster children.

It is admitted that decedent and another sister Mrs. Florrie Boucher, who predeceased her in July 1957, were very friendly and close to each other. In fact the two accounts involved in this case stood in their names jointly prior to Mrs. Boucher's death. In July 1957 Mrs. Boucher, a widow, became ill and moved into decedent's apartment where she died about two weeks later. It appears in evidence that shortly after Mrs. Boucher's death Mrs. Jordan, Mrs. McKay and her husband went to the apartment; that they demanded an accounting of Mrs. Boucher's property; that a quarrel ensued between decedent and her two sisters; and that she ordered them to leave. The respondent's name was added to the bank accounts in August 1957 after the occurrence of this incident. The decedent was ill at the time and thereafter, on October 16, 1957, she was admitted to a hospital where she died on November 7, 1957.

Mrs. McKay and Mrs. Jordan, complainant's principal witnesses, testified that they visited decedent about a week after Mrs. Boucher's death; that decedent was very sick at that time; that Mrs. Jordan suggested to her that respondent's name be put on decedent's bankbooks for the sole purpose of taking care of her affairs; that decedent knew she had an incurable disease; that in October 1957 she went to the hospital; and that while there she told them she had added respondent's name to the bankbooks. They also testified that decedent told them she wanted her money used to pay her expenses in a convalescent home and that if she died she wanted the money divided equally between Mrs. Jordan and Mrs. McKay.

The respondent denied that decedent had added her name to the accounts for convenience. She testified in substance that about a week after Mrs. Boucher's death decedent told her she wanted to put respondent's name on the bankbooks;

that she did not want Mrs. McKay or Mrs. Jordan to have any of her property; and that she knew respondent would take care of her. She stated that decedent said to her, "I want you to have what I have, I don't want them to have anything of mine * * * I know Claire that you will take care of me." The respondent then described how and when decedent delivered possession of the two bankbooks to her. She testified that she retained possession of both bankbooks from the time they were delivered to her by decedent until the latter's death. She also stated that prior to decedent's death she made two withdrawals of money from such accounts to pay her hospital bills.

Thomas Parker and his wife Elizabeth testified on behalf of respondent. They stated in substance that they had lived for fifteen years in an apartment adjoining that of decedent; that they were friendly with her and respondent; and that they were not related to either. The substance of their testimony was favorable to respondent and corroborated her version of what happened.

. Elizabeth Parker testified that she saw decedent every day; that on the night of the quarrel between decedent and her two sisters the decedent had a spell which she attributed to the visit from her sisters; that soon thereafter decedent told her she was putting her money where she wanted it to go; that she was adding respondent's name to the bankbooks; that she did not want her sisters to have any of her money; and that she wanted respondent to have it. She also testified that decedent told her, "I have given my money to my niece to do what she likes, no strings attached"; and that after her bills were paid the money was to go to respondent.

Edith Smith testified that she had known decedent since 1928; that she had worked with her; that decedent had told her repeatedly that she did not like Mrs. McKay and Mrs. Jordan and their way of life; that when she visited decedent in August 1957 she told her about the quarrel with

her sisters and that she had ordered them out of her apartment; and that she also told her she did not want her two sisters to have any of her hard-earned money. The witness also stated that she had never met respondent until decedent's death.

The trial justice found that respondent's name was voluntarily added to the accounts by decedent; that it did not appear to him that convenience had any influence in causing decedent to do what she did; that she was fond of respondent; and that there was no inconsistency in making a gift to her and expecting in return that respondent would see that decedent's bills were paid. In passing upon the question of decedent's intention in placing respondent's name on the bankbooks and delivering them to her, the trial justice stated that he was giving great weight to the testimony of the Parkers and Edith Smith. He stated that these witnesses appeared to be people of character who were not related to decedent and who did not stand to profit regardless of the outcome of the case.

After a consideration of all the evidence he found that it was decedent's intention to divest herself of exclusive ownership and control over the moneys deposited in the two bank accounts and to vest ownership and control jointly in herself and respondent, and that this intention was carried out completely. Thereafter a final decree was entered denying and dismissing the bill of complaint on the basis of findings that upon the death of decedent the respondent became the sole owner of the accounts in question and that complainant had no interest therein.

In his reasons of appeal complainant alleges that such decree is contrary to the law and the evidence and the weight thereof. He contends in substance that respondent has not sustained the burden of proving by clear and satisfactory evidence that decedent intended to make an inter vivos gift of a joint interest in her bank accounts, and that therefore the decision of the trial justice is clearly wrong

and the decree based thereon is unlawful. We do not agree with complainant.

In *Raferty* v. *Reilly,* 41 R. I. 47, the court stated at page 50, "It will be held that the owner of money has created the joint interest of himself and another in a deposit of such money when it appears to be his intention to divest himself of the exclusive ownership and control of the money so deposited and vest such ownership and control jointly in himself and another, with the attendant right of survivorship. The intention to make a present gift of a joint interest in such deposit may appear in the statement of the depositor or it may be shown by his acts and the attendant circumstances."

It is fundamental that in cases such as this the state of mind of the purported donor is of paramount importance, especially where the adding of another's name to a bankbook and the delivery thereof to such person are voluntary. Whether or not the donor intends to make an inter vivos gift of a joint interest in a bank account when he adds another's name to such account and completes delivery of the bankbook to such other person is a question of fact. *Lowe* v. *Angell,* 44 R. I. 383.

The trial justice found as a fact that it was decedent's intention, as evidenced by her words and acts, to effect an inter vivos gift and that she carried out such intention completely. In arriving at such conclusion he expressly stated that he was relying to a great extent on the testimony of certain witnesses who had no interest in the result of the case, and from which testimony he was able to draw certain inferences on the question of decedent's intention in support of his finding of a donative intent in praesenti and a completed gift inter vivos.

He saw and heard the witnesses and consequently had an advantage, which we do not have, of passing upon the credibility and weight of their conflicting testimony. That advantage is of great benefit in a case of this kind where of

260

necessity ultimate findings depend upon such factors. His findings of fact are therefore entitled to great weight and will not be disturbed by us unless they are clearly wrong and fail to do justice between the parties. *Walther* v. *McOsker,* 87 R. I. 386, 142 A.2d 128.

The burden of establishing a gift inter vivos is upon a claimant. He must establish that the donor intended, in praesenti, to divest himself of the exclusive ownership and control over the subject matter of the alleged gift and to vest ownership and control jointly in the claimant. *Weber* v. *Harkins,* 65 R. I. 53, 59. The trial justice found that respondent had sustained such burden. After carefully examining the record we cannot say that he was clearly wrong.

That the only withdrawals made by respondent during decedent's lifetime were those for decedent's benefit is not a fact which of itself would prove that she did not intend to make a gift to respondent in praesenti of an interest in the bank accounts. *Industrial Trust Co.* v. *Taylor,* 69 R. I. 62, 67; *Raferty* v. *Reilly,* 41 R. I. 47, 51; *Industrial Trust Co.* v. *Scanlon,* 26 R. I. 228. It is not respondent's claim that decedent intended to give up all interest in such accounts. She merely intended to give up her exclusive control and ownership and vest the same jointly in herself and respondent. *Raferty* v. *Reilly, supra.*

There is no merit in complainant's contention that decedent intended to make a testamentary disposition of her property to respondent. The trial justice resolved the conflicting testimony on this issue in favor of respondent. We cannot say that such finding is clearly wrong. He found that decedent was fond of respondent and he gave credence to the testimony of certain disinterested witnesses who testified that the relations between decedent and her two sisters were not amicable. In our opinion such evidence supports a reasonable inference, in connection with all the other evidence, that decedent did not intend to die pos-

sessed of any property which might go to her two sisters. See *Tabor* v. *Tabor*, 73 R. I. 491, 495.

We now come to complainant's contention that the trial justice erred in excluding certain evidence. His reasons of appeal contain no objection to any ruling of the trial justice on evidentiary matters. It is well settled that an appeal from a final decree in equity brings before this court only the error stated in the appellant's reasons of appeal. *Vaill* v. *McPhail*, 34 R. I. 361. In the absence of any objection to such evidentiary rulings appearing in the complainant's reasons of appeal, it follows that the instant contention is not properly before us.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Israel Moses*, for complainant.

*Edwards & Angell, James K. Edwards*, for respondent.