DECISION
This matter is before the Court for decision following a trial upon the facts without a jury. Under such circumstances, Rule 52(a) of the Rules of Civil Procedure requires the Court to find the facts specially and to separately state its conclusions of law thereon. Decision, reserved pending the filing and review of Proposed Findings of Fact and Post-trial Memoranda, is rendered herein.
FACTS
The basic dispute arises out of the legal significance of certain actions of Florence A. Izzi (hereinafter referred to as the Decedent) who died intestate on December 27, 1993. This suit was brought by Shayle Robinson in his capacity as the duly appointed administrator of Decedent's estate. The defendant are Elisa "Betty" Delfino (hereinafter referred to as Delfino), a sister of Decedent, and Paul Delfino, her husband, and Donald C. Rich (hereinafter referred to as Rich), a long time and extremely close friend of Decedent. At issue are certain funds represented by various bank accounts opened during her lifetime by Decedent. Some of the accounts in question here were joint accounts between Decedent and Delfino, and the other accounts here in question were joint between the Decedent and Rich.
The Court accepts and herein incorporates the following facts from the Plaintiff's proposed findings of fact:
 (1) Decedent opened each of the disputed accounts using her social security number and she alone paid the income taxes on the interest earned.
 (2) On January 3, 1994, Delfino withdrew the sum of $107,775.75 from six bank accounts that Decedent had opened in both their names.
 (3) In February and March of 1994, Rich withdrew the sum of $66,126.88 from three bank accounts that Decedent had opened in both of their names on February 3, 1993 in Old Stone Bank.
 (4) All of the funds that Decedent used to open the said three accounts on February 3, 1993, came from three accounts she had closed out on that date in Old Stone Bank that had been previously opened by her in her name and in the name of Delfino.
 (5) Decedent also opened the following three bank accounts in her name and in the name of Rich, on the dates and in the amounts indicated:

 (1) January 28, 1991 $19,102.79
 (2) February 24, 1992 $15,758.71
 (3) April 6, 1992 $20,956.78

 (6) On February 11, 1994, Rich withdrew $63,065.92 from the said three accounts which sum constituted the entire balance in each of the three accounts.
 (7) Neither Delfino or Rich made any deposits in any of the said bank accounts during Decedent's life.
 (8) Neither Delfino or Rich ever had possession of any certificates of deposit, bank books or bank statements that evidenced the existence of the said accounts.
 (9) Decedent had a personal checking account in her own name that had a balance of $3,530.24 on the date of her death.
 (10) Of the six bank accounts opened by Decedent that were in her name and in the name of Delfino on December 27, 1993, two had the interest automatically withdrawn each month and deposited into Decedent's personal checking account and from December 15, 1989, up to and including February 17, 1994, after the death of Decedent, the sum of $40.00 per month was automatically withdrawn from her personal checking account and deposited into a statement savings account in the Rhode Island Hospital Trust Bank account number 1004893549, which she had opened in her name and the name of Delfino.
 (11) Said statement savings account had a balance of $17,045.80 as of December 17, 1993, and no withdrawals were made thereafter until Delfino withdrew that amount on January 3, 1994.
 (12) There was in existence a certificate of deposit that the Decedent had originally opened in her name and in the name of her brother, John Izzi (hereinafter referred to as Izzi), using her funds and her social security number from which no funds were withdrawn by either of them and which had a balance of $22,916.51 on the date of the death of Decedent.
 (13) On or about December 22, 1993, Decedent told Delfino that she wanted to see an attorney. Delfino told that to Izzi who contacted his attorney, John J. Vallone, Jr. (hereinafter referred to as Vallone).
 (14) Attorney Vallone met with Decedent on December 23, 1993, at the nursing home where she then resided and, as a result, he was engaged to prepare a power of attorney for Decedent naming Delfino and Izzi as attorneys-in-fact.
 (15) At the time that Vallone met with Decedent, Delfino, Izzi and Rich were at the nursing home.
 (16) Decedent died intestate on December 27, 1993, before Vallone met with her again.
The Joint Stipulation of Facts established that, as to all of the accounts in question, bank signature cards were completed and filed with the appropriate financial institution both by the Decedent and by the named joint tenant.[1]
The notes of Attorney Vallone, introduced as an exhibit, state that he was "alone in room with [Decedent]. John Izzi, Betty Delfino and friend Don Rich waited in hall. She called Betty who came in later." Vallone testified, inter alia, that during the course of his meeting with Decedent, she stated that, she did not know what she wanted to do with the monies in the joint accounts at that time.
Delfino testified that, at the time Decedent opened the accounts in her name and the name of Delfino, Decedent stated to Delfino that she was making a "lifetime gift" to Delfino.
OWNERSHIP OF THE JOINT ACCOUNTS
Rhode Island law governing ownership of a joint bank account upon the death of the other joint tenant is well settled. When an account in question is in the form of a joint bank account, "the form of the account constitutes prima facie evidence of ownership in the survivor upon the death of the other joint owner. [Citation omitted]. Prima facie evidence, if unrebutted, is sufficient to satisfy the burden of proof on a particular issue. [Citation omitted]. The form of a jointly held account is, however, not controlling." Nocera v. Lembo, 121 R.I. 216, 218,397 A.2d 524, 525-26 (1979). Ownership of a joint account upon the death of the other joint owner "may be rebutted by evidence tending to show that the name of the survivor was added to the account by the original owner for his [or her] convenience and not with the intention of making a gift of an interest therein to the survivor or [by evidence tending to show] that the original owner's intention was to vest an interest in the survivor only after the owner's death." Flynn v. Byrne, 82 R.I. 48, 53-54,105 A.2d 800, 803 (1954). As to all of the accounts in dispute here, the parties agree that there is no, nor does the Court find any, evidence tending to show that Decedent added the respective survivor's name for her convenience. Consequently, this Court must determine whether the Decedent intended to vest an interest in the survivor only after her death thus not intending to make an intervivos gift of the joint account to the named survivor.
Evidence before the Court tends to show that Decedent intended to vest an interest in the named survivor only after her death. Specifically, as to all of the accounts in dispute, Decedent exercised dominion and control over the respective passbook or certificate of deposit. Therefore, each defendant claiming ownership as a survivor "who could no longer rely on theprima facie evidence to satisfy [his or] her burden of persuasion as a matter of law, [is] forced to prove . . . that the joint account was indeed meant to be a gift." [Citation omitted].Nocera v. Lembo, 121 R.I. at 219, 397 A.2d at 526. To be successful then, a survivor "must establish by clear and satisfactory evidence that the donor intended, in praesenti, to divest himself [or herself] of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control jointly in the claimant. In other words, such a gift must be fully executed and go into immediate and present effect. [Citation omitted]. Slepkow v. Robinson,113 R.I. 550, 556, 324 A.2d 321, 325 (1974). "The words `clear and satisfactory evidence' are, in our [Supreme Court's] opinion, synonymous with the term . . . `clear and convincing evidence.' . . . [C]lear and convincing evidence is a degree of proof which lies somewhere in between proof by a preponderance of the evidence and proof beyond a reasonable doubt. It is . . . a higher degree of proof than that which is demanded in the usual civil action." Berberian v. Dowd, 104 R.I. 585, 589-90,247 A.2d 508, 511 (1968).
"The intention to make a present gift of a joint interest in [a] deposit may appear in the statement of the depositor or it may be shown by his [or her] acts and attendant circumstances."Raferty v. Reilly, 41 R.I. 47, 50, 102 A.2d 711, 712 (1918). "[T]he state of mind of the purported donor is of paramount importance. . . . Whether or not [a] donor intends to make [such] an intervivos gift of a joint interest in a bank account when he [or she] adds another's name to such an account . . . is a question of fact." [Citation omitted]. Moses v. Wilkinson,90 R.I. 253, 259, 157 A.2d 478, 481 (1960). "[I]f the intention of the donor appears to be that the gift is to take effect only after death, the attempt to make a valid gift is ineffectual."McCartin v. Devine, 66 R.I. 100, 103, 17 A.2d 864, 866 (1941).
As to all of the accounts in question, there is no credible evidence that, upon opening the accounts in dispute here, Decedent intended that the gift take effect presently and immediately. As to the accounts naming Delfino as the joint tenant, Delfino's testimony that Decedent specifically stated that she was making a "lifetime gift" to Delfino fails to so persuade the Court. As to all of said accounts, Decedent retained dominion and control of the passbook or certificate of deposit at all times prior to her death; there was no commingling of Delfino's money with Decedent's money in said accounts; the interest earned was paid to Decedent and she paid any income taxes on it. Further, on February 5, 1993, Decedent closed three of the said accounts then deposited the respective sums into three new joint accounts which named herself and Rich as joint holders. Similarly, as to the joint accounts between Decedent and Rich, there was no commingling of Rich's money with Decedent's money; the interest earned was paid to Decedent and she paid any income taxes on it.
After due deliberation, applying the facts as this Court has found to the law, the Court does not find clear and satisfactory evidence tending to show that Decedent added the respective survivor's name to the joint accounts in dispute here with the intention of making and fully executing a present and immediate gift. The Court orders the Defendants to return any funds removed by them from any of the joint bank accounts that Decedent had opened in her name and in the name of a Defendant, plus interest earned thereon, within 30 days.
Counsel shall prepare an order consistent with this decision.
[1] However, with respect to the signature cards, as stated in the Joint Stipulation of Fact, Rhode Island Hospital Trust National Bank was unable to locate the respective signature card for the following accounts: 9301201076, 930120241, 9301201357 and 1004-893549.