Fuller *v.* Pennsylvania Railroad Company, Appellant.

Argued April 13, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Bruce R. Martin*, with him *Dalzell, McFall, Pringle & Bredin*, for appellant.

*Ralph S. Davis, Jr.*, with him *Evans, Ivory & Evans*, for appellee.

OPINION BY ROSS, J., September 27, 1951:

This is an action of trespass brought to recover for personal injuries sustained by the plaintiff while he was riding as an intrastate passenger on a train owned and operated by the defendant. The jury returned a verdict in plaintiff's favor and after the defendant's motion for judgment n.o.v. was refused by the court below, it took this appeal.

The plaintiff was injured on October 6, 1948, when the train on which he was riding was derailed due to a rock slide from a hillside adjoining the defendant's tracks. The hillside from which the rock fell to the defendant's tracks is a part of its right of way and is maintained by it. The cut, starting at track level, consists of a layer of sandy shale rising from the roadbed to a height of six feet. Above this sandy shale, and protruding trackward to form an overhang of about three and one-half feet from the side of the cliff, is a layer of massive sandstone twelve feet thick. The next layer or stratum is also a sandy shale which varies in width. From there to the top of the cut are various types of sandstone rock. The landslide or rock fall which caused the derailment came from the massive sandstone overhang, and consisted of about 85 tons of rock which was scattered over the entire right of way. Prior to the accident rocks which had fallen from the hillside were observed in the ditch beside the

rails at various times over a period of four years. The fact that rocks had fallen to the ditch was known to the defendant's track supervisor.

The plaintiff was at the time of the accident, and had been for a number of years, an employe of the defendant and at the time of the accident he was riding an employe's pass containing the usual restrictions against liability. The release of liability provision deprived the plaintiff of the aid of the doctrine of res ipsa loquitur accorded paying passengers and cast upon him the burden of affirmatively proving defendant's negligence. *Turek v. Pennsylvania Railroad Co.*, 361 Pa. 512, 64 A. 2d 779. The negligence in this case upon which the plaintiff bases his right to recover is that the defendant failed to maintain its right of way in a reasonable and safe condition.

While, of course, it is well settled that the mere happening of an accident does not establish negligence, it is equally well settled that negligence may be inferred from the circumstances attending an accident. *Turek v. Pennsylvania Railroad Co.*, supra; *Bills v. Zitterbart*, 363 Pa. 207, 69 A. 2d 78; *Noyes v. Sternfeld*, 164 Pa. Superior Ct. 461, 65 A. 2d 433.

In determining the question as to whether judgment n.o.v. should be entered for the defendant, the plaintiff is entitled to a review of the evidence in the light most favorable to him and to the benefit of every doubtful or obscure fact and the reasonable inferences that a jury might deduce therefrom (*McCreery v. Westmoreland Farm Bureau Co-operative Assn.*, 357 Pa. 567, 55 A. 2d 399), and he is further entitled to have the evidence supporting his verdict considered and all the rest rejected. *Sorrentino v. Graziano*, 341 Pa. 113, 17 A. 2d 373.

Robert S. Stewart of a firm of consulting geologists and engineers, was called by the plaintiff as an expert

witness. The witness, although not familiar with the hillside before the accident, described the action of water, ice and alternate freezing and thawing on the face of such a hillside and stated that this process could be expected to produce fissures or cracks in the rock strata. He testified: "Q. Over the course of time could you reasonably expect the weathering of this face of this cut to produce fissures and cracks in the rock? A. Yes. Q. And with the alternate freezing and thawing, as the seasons change, you would have the breaking and cracking of the various strata along the face of the cut? A. Yes, that is a process which goes on continually, as long as there is ground water available." He testified that it would be reasonable to expect rocks to fall from the face of the cliff and stated that the fact that rocks may fall after weathering and erosion would be apparent to a qualified observer, whom he defined as someone familiar with the action of weather upon an open cliff. He further stated that there were signs of water or drainage in the face of the cliff at the point where the slide occurred. Clinton P. Sipe, defendant's track supervisor for that portion of its right of way at which the accident occurred, testified that he knew of the horizontal and vertical cracks in the face of the cliff. He testified that there was an overhang of massive sandstone large enough for men to sit under, and stated that the rock beneath the overhang was eroded. Sipe testified that he realized that rocks from the hillside had a tendency to "get loose and come down" and admitted that the defendant employed a "gang" to take them away from time to time. He further stated that "any hillside with the rock strata and conditions that are on this hill requires constant watching". Though some of Sipe's men had *visually* inspected the hillside in the vicinity of the rock slide on August 31, 1948, the last scaling of the cliff face took place more than three months before the accident. Wil-

liam P. Braun, a registered civil engineer, was called by the plaintiff. After testifying concerning his inspection of the cliff after the slide and his examination of the photographs and other exhibits in evidence, he was asked if there was a method by which such a cliff could be supported or faced to prevent a rock slide. Braun replied that the construction of a concrete facing wall or revetment wall would serve the purpose, that such a wall would prevent weathering and that it was an approved method of facing a cliff close to a road or railroad track. He further stated that in his opinion such wall would have remedied the situation and prevented the slide.

It is contended on behalf of the defendant that there is no testimony in the record that the fall of the massive sandstone could have been anticipated. It is pointed out that for at least a thirty-nine-year period no landslide had occurred at the place where the accident happened. The thirty-nine-year period of repose, however, was broken by a four-year period during which rocks fell from the face of the cliff. The alternate freezing and thawing of the open face of the cliff could be expected to, and did, produce fissures or cracks in the rock strata. It would seem, therefore, that every change of temperature within the critical limits over the thirty-nine-year period merely hastened the day when a rock slide might occur with resulting danger to passengers on defendant's trains. "Negligence has been often and authoritatively defined as 'want of care under the circumstances.' The word 'circumstances' is comprehensive. It embraces the entire sum of the attendant facts, including the operation of the forces of nature so far as they bear upon or relate to the happening of the central event. A person is charged with ordinary knowledge of the workings of these forces, and his conduct, if it is to escape being stigmatized as wanting in care, must conform to the normal workings of the forces of

nature." *Pope v. Reading Company,* 304 Pa. 326, 333, 156 A. 106.

In *McCarthy v. Ference,* 358 Pa. 485, 58 A. 2d 49, the plaintiff was riding in a bus which was traveling along a street laid upon a ledge or shelf cut into a hillside under the control of the defendant. A huge rock fell from the hillside adjoining the street and struck the bus, injuring the plaintiff. A number of witnesses testified that from 1928, when the street was opened, until 1942, when the accident occurred, there were numerous slides and falls of rock upon the highway. In affirming judgment for the plaintiff the Court, speaking through Mr. Justice STERN, stated at page 493: "It may be true, generally speaking, that a landowner is not subject to liability for bodily harm caused to others outside the land by a *natural* condition of the land, even though he recognizes or should recognize the natural condition involved a risk of such harm; (see Restatement, Torts, §363). Here, however, we are concerned with a happening that was caused, not by a natural, but by an *artificial* condition created by human agency, and which became harmful through the subsequent operation of natural forces."

In the present case the warnings of the impending slide may not have been so spectacular nor so numerous as those in the *McCarthy* case, but the defendant through its employe Sipe was possessed of expert knowledge beyond that of the ordinary landowner. Whether the information which the defendant had was sufficient to put it on notice of the dilapidation of the hillside and the consequent unreasonable risk of harm involved therein was a question for the jury.

Finally the defendant contends that it did all that it could reasonably be expected to do in order to prevent the accident. It cannot be expected to construct miles of concrete revetment wall, the defendant argues. Our Supreme Court in the *McCarthy* case quoted with

approval a New York case, *Shaknis v. State,* 295 N.Y.S. 663 (aff. 277 N.Y. 558, 13 N.E. 2d 472), which held that it was the duty of the state which owned a hillside adjacent to a highway to construct necessary barriers to prevent injury to persons traveling on a highway when such injuries were the result of a rock falling from the hillside. And further, in this case there is nothing to show that *miles* of wall were required; in fact, the witness Sipe testified that a mile and three-quarters from the place of the slide which gave rise to the present action there is "an entirely different rock formation". Again, it was a jury question whether the measures adopted by the defendant in the maintenance of this hillside discharged the duty of care it owed to the plaintiff.

Judgment affirmed.