## Barker, Appellant, *v.* Brown et al.

76

Argued March 18, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*David B. Corneal,* with him *Litke, Gettig, Flood, Lee & Martin,* for appellant.

*John W. Blasko,* with him *McQuaide, Blasko & Brown,* for appellees.

OPINION BY PRICE, J., June 24, 1975:

This case presents the question of the liability of a possessor of land for damages caused by the fall of his tree upon the property of an adjoining landowner. Surprisingly, the precise issue raised has never before been determined by a Pennsylvania appellate court. The plaintiff-appellant, Virginia Barker, appeals from the lower court's grant of a motion for summary judgment in favor of the defendants-appellees, L. Edwin Brown and Edith J. Brown. We disagree with the lower court's conclusion of law and, therefore, will reverse.

Viewing the facts in the light most favorable to the appellant, as we must for the purposes of this appeal, *Gast v. Petsinger,* 228 Pa. Superior Ct. 394, 323 A.2d 371 (1974), the record establishes that the appellant's property, in Centre County, Pennsylvania, adjoined that of the appellees, and that both properties are in a residential district of State College Borough. On appellees' property was a large tree which appellees knew, or should have known, was in a decayed, rotting and dangerous condition. Appellees negligently failed to take steps to avert the danger and, as a result, the tree fell onto appellant's property. The fall of the tree caused the destruction of two of appellant's trees, valued at approximately $600 each. Appellant had to have the fallen tree removed from her property, at a cost of $147.50, and the process required appellant to miss two days of work, causing lost wages of $34.00. Finally, the incident caused a depreciation in the value of appellant's property, in the amount of $600.00. In this action, appellant seeks to recover those damages from appellees.

The dispute proceeded to arbitration, and the panel of arbitrators rendered their award in favor of the appellees. Appellant appealed that decision to the Court of Common Pleas of Centre County, where the summary judgment presently under consideration was granted.

The basis for the decision of the lower court, and of the panel of arbitrators,[1] was Section 363 of the *Restatement (Second) of Torts* (1965). That section provides:

"(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."

Subsection (2), by creating a specific exception to subsection (1) for trees near a highway, would seem to remove all doubt as to whether subsection (1) was intended to apply to trees not near a highway. Clearly, it was so intended, and the application of §363 would preclude recovery in this case. However, for the reasons set forth hereinafter, we decline to apply the *Restatement's* distinction between natural and artificial conditions, to these particular facts.

The Scope Note preceding §363 in the *Restatement* observes that liability for a possessor's negligent conduct on his land can also be premised on a nuisance theory, covered in the *Restatement of Torts* §§822-864 (1939). This is of little aid to appellant, for the *Restatement,* consistent in its approach, provides in §840 that:

"Where a natural condition of land causes an invasion of another's interest in the use and enjoyment of other

---

1. The opinion of the arbitrators is written and a part of the Record.

land, the possessor of the land containing the natural condition is not liable for such invasion."

Pennsylvania's appellate courts have adopted §363, although the distinction between natural and artificial conditions has never been at issue. In *McCarthy v. Ference*, 358 Pa. 485, 58 A.2d 49 (1948), liability was imposed when an eight-ton rock fell from the defendant's hillside to the highway below, and struck the bus in which the plaintiff was riding. The court recognized the *Restatement's* distinction between natural and artificial conditions, but held that the injury had been caused by an artificial condition, *i.e.*, the cutting of the hillside to form the road. In *Green v. Freeport Borough*, 218 Pa. Superior Ct. 334, 280 A.2d 412 (1971), this court relied on §363(2) when the plaintiff's truck struck the limb of a tree overhanging the highway. Finally, in *Fuller v. Pennsylvania Railroad Company*, 169 Pa. Superior Ct. 523, 83 A.2d 405 (1951), the plaintiff was injured when the train in which he was riding was derailed by a rockslide from the defendant's property. The circumstances in that case were substantially the same as they were in *McCarthy*, and the court based its decision on the fact that the conditions were artificially created.

Though few cases directly on point have been decided in other jurisdictions, it appears that most courts, when faced with these facts, have not opted to follow the *Restatement* view. In *Kurtigian v. City of Worcester*, 348 Mass. 284, 203 N.E.2d 692 (1965), the plaintiff was injured when a tree limb was blown from defendant's property. The court, finding liability, stated that the *Restatement's* distinction between artificial and natural conditions had not been argued, but indicated that it would not look upon such an argument with favor:

"Public policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and, particularly in an urban area, that there be no cases of nonliability

where a private nuisance may be maintained with impunity." 348 Mass. at 291, 203 N.E.2d at 696.
See also *Rowe v. McGee,* 5 N.C. App. 60, 168 S.E.2d 77 (1969) ; *Farbe v. Klein,* 187 So.2d 467 (La. App. 1966) ; *Dudley v. Meadowbrook, Inc.,* 166 A.2d 743 (D.C. Mun. App. 1961) ; *Gibson v. Denton,* 4 App. Div. 198, 38 N.Y.S. 554 (1896). But see *Griefield v. Gibraltar Fire & Marine Ins. Co.,* 199 Miss. 175, 24 So.2d 356 (1946).

No citation of authority is necessary to support the proposition that the *Restatement of Torts* (1939) and the *Restatement (Second) of Torts* (1965) are highly regarded by Pennsylvania courts. But this does not mean that we will follow them blindly. They do not, of course, carry the weight of legislative enactments and we will not follow them where they conflict with our view of Pennsylvania's public policy.

In this situation, the arguments in favor of liability far outweigh any arguments in favor of non-liability. It may very well be true that the distinction between artificial and natural conditions was valid in a time when landowners were possessed of, and hence would have been charged with the care of large quantities of land. It would still be valid today in rural areas where large landholdings are common. Under those circumstances, the time consumed and the expense involved in inspecting and repairing natural conditions would be unreasonably large compared to the danger involved. Pennsylvania is blessed with immense areas of farming and undeveloped land and we do not wish to place unrealistic burdens on its owners.

On the other hand, we do not believe that the distinction should be applied to land in or near a developed or residential area. Urban living, by altering the purpose for which the land is used, must also bring with it certain responsibilities. A tree growing in an urban or residential area does not have the same natural relation to surrounding land as a tree located in a rural setting. That tree, once growing in the midst of a forest, is no longer the

same "natural object" when a city grows around it or residential areas are developed in proximity to it. Specifically, the relatively minor expenditures in time and money that it will take to inspect and secure trees in a developed or residential area is not large when compared with the increased danger and potential for damages represented by the fall of such a tree.

We hold that a possessor of land in or adjacent to a developed or residential area is subject to liability for harm caused to others outside of the land by a defect in the condition of a tree thereon, if the exercise of reasonable care by the possessor:

(a) would have disclosed the defect and the risk involved therein, and

(b) would have made it reasonably safe by repair or otherwise. See *Restatement (Second) of Torts* §365 (1965); *McCarthy v. Ference, supra.*

The reasonable care standard encompasses, at least, a duty to make a visual inspection. Under some circumstances, it may encompass more. *Starke v. Long*, 221 Pa. Superior Ct. 338, 292 A. 2d 440 (1972). If the possessor of land in or adjacent to a developed area knows, or should know, through inspection or otherwise, that a defect in one of his trees poses an unreasonable danger to others outside of the land, he is under a duty to eliminate that danger.

In this case, the appellant averred in her complaint, *inter alia,* that the appellee "knew, or should have known, that the said tree was in a decayed, rotting, and dangerous condition." This is denied by the appellees, but for purposes of this appeal, we have had to accept the facts alleged in appellant's complaint as true. On remand, of course, the question will be one for the fact-finder.

The judgment of the lower court is reversed and the case is remanded for proceedings consistent with this opinion.