**Squicquero v. Ross**

C.P. of Lawrence County, no. 10090 of 2005, C.A.

*Charles W. Garbett,* for plaintiff.
*Mark F. Bennett,* for defendants.

MOTTO, *J.,* March 24, 2010—Before the court for disposition is the motion for post-trial relief filed by the

defendants following a jury trial that resulted in a verdict in favor of plaintiff and against the defendants. This action arose from an incident that occurred on May 11, 2003 when the plaintiff Stephanie Squicquero was a passenger in an automobile stopped for a traffic signal. While stopped, a tree located on the property of the defendants fell onto the Squicquero automobile, causing serious and extensive injury to plaintiff's left arm. In bringing this action against the defendants, the plaintiff maintained that the defendants knew or should have known that the tree was diseased and rotted; that they knew or should have known that the condition of the tree created a dangerous condition; and that the defendants failed to take action to correct the dangerous condition by removing the tree. The jury found that the defendants were negligent, that the negligence of the defendants was a substantial factor in bringing about the harm to the plaintiff and awarded damages for past medical expenses, future medical expenses, pain and suffering, embarrassment and humiliation, loss of enjoyment of life, and disfigurement. Defendants' post-trial motion raises the following issues:

(1) Was it error for the court to permit the plaintiff to introduce evidence of plaintiff's past medical bills paid by the Department of Public Welfare (DPW).

(2) Should the court have excluded the identification testimony of Larry Shaffer.

(3) Did the plaintiff's evidence fail to establish a basis for a finding of negligence on the part of the defendants.

# I. EVIDENCE OF PAST MEDICAL BILLS

Defendants argue that plaintiff should have been precluded from recovering the medical expenses that were paid by the Commonwealth of Pennsylvania, Department of Public Welfare based upon the holding in *Tristani v. Richmond,* 609 F. Supp.2d 423 (W.D. Pa. 2009).

In *Tristani,* the Pennsylvania Department of Public Welfare placed liens on settlement proceeds obtained from third parties by recipients of Medicaid benefits. The settlement proceeds resulted from personal injury actions instituted by the recipients of the Medicaid benefits. The *Tristani* court held that, although DPW can require an assignment of the right to receive payments for medical care, and can also demand as a condition of Medicaid eligibility that the recipient assign in advance any payments that may constitute reimbursement for medical costs; nevertheless, DPW cannot force an assignment of, or place a lien on, any portion of the general property of a recipient of benefits including settlement proceeds not specifically allocated to medical payments. Thus, the lien placed by DPW upon the general settlement proceeds was unlawful, as violative of the anti-lien provisions of the Social Security Act, 42 U.S.C. §1396 et seq.

However, in holding that DPW was prohibited from asserting a lien against the general property of the recipient of benefits paid by Medicaid for medical expenses, the *Tristani* court did not infringe upon the right of those recipients to collect payments for medical expenses in a third-party action. *Tristani* held that the department has the option of pursuing a direct action against liable third parties or can intervene in an action brought

by a Medicaid beneficiary against a liable third party. *Tristani,* 609 F. Supp.2d at 486. However, *Tristani* does not affect the ability of a Medicaid recipient to pursue claims against a liable third party and collect the full amount of medical expenses incurred as the result of the injury. *Tristani* made it explicit that the Medicaid recipient retained the right to recover for medical expenses paid for by the Medicaid program, specifically stating the following:

"Pennsylvania law permits a Medicaid recipient to include medical expenses paid for by the Medicaid program within his or her claim against a liable third party. 62 Pa.C.S. §1409(b)(5)(vi)." "Although DPW had the option of commencing its own actions against the liable third parties to reimburse itself for the expenditures incurred in providing medical assistance to Tristani and Valenta, these two individuals never lost the option of including those expenditures within their own claims." *Tristani,* 609 F. Supp.2d at 472.

Defendants further argue that plaintiff is precluded from recovering the medical expenses paid for by the DPW pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law, specifically 75 Pa.C.S. §1722. Such section provides as follows:

"In any action for damages against a tort-feasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded

from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719."

75 Pa.C.S. §1719 provides: "As used in this section the term 'program, group contract or other arrangement' includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations)."

Benefits paid for medical expenses through the Department of Public Welfare constitute payments made by a governmental agency and is not a program, group contract or other arrangements contemplated by section 1719, and is not a hospital plan or a professional health service corporation. The Medicaid program is authorized pursuant to the Social Security Act. Congress appropriated funds to enable the states to provide medical assistance for those whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. §1396. The Medicaid program involves cooperation between the states and federal government. Depending upon the particular states' per capita income, the federal government pays anywhere between 50 percent and 83 percent of the costs that the state incurs for providing medical assistance to those who are eligible to receive it. 42 U.S.C. §1396d(b). *Tristani v. Richmond,* 609 F. Supp.2d at 440.

In *Browne v. Nationwide Mutual Insurance Company,* 449 Pa. Super. 661, 674 A.2d 1127 (1996), the Superior Court held that Social Security disability benefits should

not be deducted from an arbitration award under the terms of section 1722 of the Motor Vehicle Financial Responsibility Law as Social Security disability payments were not encompassed in a language of "any program, group contract or other arrangement." The *Browne* court noted that the same language, concerning any "program, group contract, or other arrangement," is also contained in 75 Pa.C.S. §1720, which eliminates subrogation and provides:

"In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits payable under sections 1711 (relating to required benefits) 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits)."

It is clear that the nature of the benefits under the medicaid program are subject to subrogation, and the right of subrogation is not taken away by section 1720. *Tristani* did not hold that there was not a right of subrogation in DPW, but only that the DPW did not have the right to assert a lien against settlement proceeds which constituted general property of the Medicaid recipient as opposed to a specific award of compensation for the same medical benefits that were paid for by the Medicaid program and for which the plaintiff sued and recovered. Furthermore, the nature of the benefit being such that it is a benefit conferred by the government, it is more similar to the type of benefit contemplated by *Browne,*

a benefit for which recovery is not precluded by section 1722 of the Motor Vehicle Financial Responsibility Law. Here, since the DPW had an independent right to intervene in this third-party case, for the express purpose of seeking recovery for the Medicaid payments, or alternatively pursue a direct cause of action for such payments against the tort-feasor, section 1722 cannot be interpreted as precluding the recovery of these benefits.

## II. IDENTIFICATION TESTIMONY OF LARRY SHAFFER

Defendants next argue that the court improperly permitted Larry Shaffer to offer identification testimony. Plaintiff called Shaffer to testify that sometime prior to May 11, 2003, he was working in the area and he was told by one of his men that a lady wanted to talk to him about a tree. The tree was the tree that later fell on the vehicle of the plaintiff. Shaffer testified as having told the lady who wanted to talk to him that the tree was going into decline and should be taken down. As to the identification of the lady with whom he spoke, Larry Shaffer on direct examination stated the following:

"Q. And I know it has been sometime, but do you recognize in court the lady that you talked to that day?

"A. I believe it would be the lady sitting to the right there. (Indicating Marjorie Ross.) . . ." (N.T. November 18, 2009, pp. 21, 22.)

On cross examination, the following exchange occurred:

"Q. And, sir, can you say for sure that the person with whom you spoke was Mrs. Ross?

"A. No, sir, I cannot.

"Q. Okay. Could it have been someone else?

"A. It could have been, yes.

"Q. Okay, so, let me make sure. I think this is important for all of us. You cannot say that the woman you spoke with was, in fact, Mrs. Ross?

"A. Not definitely, no." (N.T., November 18, 2009, pp. 24, 25.)

Defendants' argument is that because Shaffer could not be certain that the lady he spoke to was in fact defendant Marjorie Ross, that his testimony should be stricken. However, it is not required that the result of a witness' observation be stated with absolute certainty. A similar argument was raised by the defendant in the case of *Commonwealth v. Stickle,* 484 Pa. 89, 398 A.2d 957 (1979),where the defendant objected to the testimony of a Dr. Miller who was asked about statements made by the victim as to how her injuries occurred. In testifying, Dr. Miller used phrases such as "I vaguely remember . . . I think I recall and I thought she said." Defendant argued because of a lack of certainty, her testimony was inadmissible. In holding that the testimony was admissible, despite its lack of certainty the *Stickle* court stated the following:

" 'The competency of a witness is a matter for the trial court to determine and is not reviewable in the absence of a clear abuse of discretion. *Commonwealth v. Ware,* 459 Pa. 334, 356, 329 A.2d 258, 269 (1974); *Commonwealth v. Kosh,* 305 Pa. 146, 155, 157 A.2d 479, 482 (1931).' *Commonwealth v. Baker,* 466 Pa. 479, 484, 353 A.2d 454, 457 (1976). . . .

" 'The result of a witness' observation need *not be positive or absolute certainty.* Such a degree of certainty cannot be demanded, even in theory . . . ; it suffices if (the witness) had an opportunity of personal observation and did get some impression from this observation.' (emphasis in original) 2 Wigmore, Evidence §658 at 768 (3d ed. 1940).

"Where a witness has observed an occurrence and formed an impression thereof, the fact that, at the trial, due to the passage of time and the fading of memory, she is not able to state with positive or absolute certainty *exactly* what she observed, but only what 'I think' or 'I vaguely remember' occurred, will not preclude the introduction of the witness' testimony.

" 'The deficiency comes merely in the quality of her recollection . . . . The law makes no objection on such grounds. It welcomes whatever quality of recollection (the witness) is able to bring.' (footnote omitted) *Id.*" *Stickle, supra,* 484 Pa. at 108, 398 A.2d at 967.

In applying the above standard, the court concludes that it was proper to allow the testimony of Shaffer. Shaffer stated his belief that the lady with whom he spoke was the defendant Marjorie Ross. The conversation occurred in the vicinity of the Ross residence and related to the tree that was the subject of these proceedings. The fact that on cross-examination Shaffer stated that he could not say for sure that the person with whom he spoke was Mrs. Ross, or that it could have been someone else or that he could not say that it was definitely Mrs. Ross all goes to the quality of his identification testimony but not as to its admissibility. It was for the jury to weigh Mr.

Shaffer's testimony in its entirety to determine if it would accept that defendant Marjorie Ross was the person with whom he spoke that day.

## III. SUFFICIENCY OF THE EVIDENCE

The defendants next contend that the evidence does not support a finding of liability against the defendants and that the court must therefore grant a motion for judgment n.o.v.

A judgment n.o.v. is the proper remedy in a civil case where the evidence is insufficient to sustain the verdict. Entry of judgment n.o.v. on the basis of evidentiary insufficiency is appropriate only in a clear case, where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Coward v. Owens-Corning Fiberglas Corporation,* 729 A.2d 614 (Pa. Super. 1999). Judgment n.o.v. is an extreme remedy that is properly entered by the trial court only where, after viewing the evidence in a light most favorable to the verdict winner, the facts are so clear that no two reasonable minds could fail to agree that the verdict, as rendered by the jury, was improper. *Rohm and Haas Company v. Continental Casualty Company,* 732 A.2d 1236 (Pa. Super. 1999). If there is any basis upon which the jury could have properly made its award, a denial of a motion for judgment n.o. v. is required. *Sewak v. Lockhart,* 699 A.2d 755 (Pa. Super. 1997). A judgment n.o.v. can also be granted where the movant is entitled to judgment as a matter of law, where the court concludes that even with all factual inferences considered adverse to the movant, the law nonetheless requires a verdict in movant's favor.

*Lockwood v. City of Pittsurgh,* 561 Pa. 515, 751 A.2d 1136 (2000).

One who owns or occupies land in a developed or residential area has a duty to make reasonable inspections of the property, and to correct any conditions unreasonably dangerous to others that could be discovered by the use of reasonable care and that could be made reasonably safe by repair or otherwise. *Barker v. Brown,* 236 Pa. Super. 75, 340 A.2d 566 (1975).

Thus, in *Barker,* where plaintiff claimed damages to his property caused by the fall of a dangerously decayed tree from the defendant's adjoining property, the Superior Court held that it was for the jury to determine whether defendants knew or should have known of the existence of an unreasonably dangerous defect that could have been eliminated. The court said the following relative to the responsibilities of a landowner regarding a tree in a residential sitting:

"Urban living, by altering the purpose for which the land is used, must also bring with it certain responsibilities. A tree growing in an urban or residential area does not have the same natural relation to surrounding land as a tree located in a rural setting. That tree, once growing in a midst of a forest, is no longer the same 'natural object' when a city grows around it or residential areas are developed in proximity to it. Specifically, the relatively minor expenditures in time and money that it will take to inspect and secure trees in a developed or residential area is not large when compared with the increased danger and potential for damages represented by the fall of such a tree.

"We hold that a possessor of land in or adjacent to a developed or residential area is subject to liability for harm caused to others outside of the land by a defect in the condition of a tree thereon, if the exercise of reasonable care by the possessor:

"(a) would have disclosed the defect and the risks involved therein, and

"(b) would have made it reasonably safe by repair or otherwise. . . .

"The reasonable care standard encompasses, at least, a duty to make a visual inspection. Under some circumstances, it may encompass more. *Starke v. Long,* 221 Pa. Super. 338, 292 A.2d 440 (1972). If the possessor of land in or adjacent to a developed area knows, or should know, through inspection or otherwise, that a defect in one of his trees poses an unreasonable danger to others outside of the land, he is under a duty to eliminate that danger." *Barker,* at 80-81, 340 A.2d at 569.

Here, testimony was presented, which the jury was entitled to accept as true, from which it could be inferred that the defendants had constructive notice of the decayed condition of the tree. Additionally, the jury could have inferred that a reasonable inspection of the tree would have disclosed the danger. Visual indications of disease included the existence of seams and splitting in the tree trunk, the existence of dead wood that was visible, cavities in the tree trunk, discoloration of the wood, rotted wood, flaring of the roots, and the existence of fungus. From this evidence, the jury was free to conclude that the defendants violated their duty to inspect the tree given its close proximity to the major highway and that

a reasonable inspection would have disclosed the decayed condition of the tree. The jury was also free to conclude that given the external signs of decay, the defendant should be charged with constructive notice of the diseased and decayed condition of the tree. Finally, the jury was free to conclude that the defendants had actual notice that the tree was in a state of decline and should be removed based upon the testimony of Larry Shaffer who provided actual notice to one of the defendants of the condition of the tree and that it should be taken down. Since the standard which the court must apply in addressing a judgment n.o.v. requires that the evidence must be viewed in the light most favorable to the plaintiff as the verdict winner, the court finds that it is required to deny the motion.

## ORDER

And now, March 24, 2010, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendants' motion for post-trial relief is denied.