J-A16029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MARYANN C. DUNLAP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RIDLEY PARK SWIM CLUB; JOHN W. HARPER, INC. AND JOHN W. HARPER, JR., T/A HARPER ASSOCIATES; HARPER ASSOCIATES MANAGEMENT, LLC; WILLIAM BARONI AND MARGARET STEUBER; MARK WARHOLIC; AND GARY AND BRIANNA SALAS, | |
| Appellants | No. 3199 EDA 2014 |

Appeal from the Judgment Entered October 16, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 12-5415

BEFORE:  LAZARUS, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:               **FILED SEPTEMBER 04, 2015**

Ridley Park Swim Club ("Ridley Park") appeals from the judgment entered on October 16, 2014.  After careful consideration, we vacate and remand.

The factual background and procedural history of this case are as follows.  On June 24, 2009, Maryann C. Dunlap ("Dunlap") was swimming at Ridley Park's pool.  While she was leaving Ridley Park's property, a tree fell on her and caused serious injuries.  Before the accident, the tree was located on property owned by Harper Associates ("the Harper property").  The tree was between 15 and 25 feet from the property line separating the Harper property and Ridley Park's property and no part of the tree overhung

_____
* Retired Senior Judge assigned to the Superior Court

Ridley Park's property. The tree was dead, decaying, and had wild vegetation growing on it. Harper Associates did not examine the tree or take any other action to ascertain if the tree posed a hazard to individuals on either the Harper property or Ridley Park's property.

On June 25, 2012, Dunlap commenced this action by filing a complaint against multiple defendants, including Ridley Park and Harper Associates. On May 23, 2013, the trial court issued a scheduling order which directed, *inter alia*, that all expert reports be produced at least 90 days before trial.

Prior to trial, Harper Associates and Dunlap submitted their dispute to binding high/low arbitration. The arbiter awarded Dunlap $350,000.00. After the arbitration award, Dunlap and Harper Associates entered into a *pro rata* joint tortfeasor release. Dunlap agreed to accept the $350,000.00 from Harper Associates in exchange for dropping all claims against Harper Associates and related parties. The release provided that recovery against Ridley Park "shall be reduced only to the extent of the *pro-rata* share of such damages as may be attributable to [Harper Associates and related defendants], the alleged tortfeasors hereby released." Exhibit A to Post-trial Motion, 3/28/14, at 2.

On January 16, 2014, Dunlap's facilities management expert, Brian O'Donel ("O'Donel"), authored an expert report in which he opined that Harper Associates was responsible for Dunlap's injuries. That report, however, was not provided to Ridley Park until after trial commenced. On

February 12, 2014, O'Donel authored a second expert report in which he faulted Ridley Park for not examining the trees located on the Harper property. That report was promptly provided to Ridley Park.

Harper Associates did not participate in the trial that commenced on March 17, 2014. At trial, Ridley Park objected to O'Donel's testimony because his expert reports were produced after the deadline set by the trial court. The trial court overruled the objection and permitted O'Donel to testify. On cross-examination, Ridley Park questioned O'Donel regarding the January 16 expert report. Dunlap objected and the trial court sustained the objection. At the close of Dunlap's case-in-chief, the trial court ruled that Harper Associates would not appear on the verdict form. The trial court reasoned that Ridley Park would be unable to prove a *prima facie* case of negligence against Harper Associates because Ridley Park did not retain an expert witness to testify regarding Harper Associates' negligence.

On March 19, 2014, the jury returned a verdict in favor of Dunlap and against Ridley Park in the amount of $750,000.00. On March 28, 2014, Ridley Park filed a post-trial motion. On October 6, 2014, the trial court denied the post-trial motion. On October 16, 2014, judgment was entered in favor of Dunlap and against Ridley Park. This timely appeal followed.[1]

---

[1] The trial court did not order Ridley Park to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Nonetheless, on December 10, 2014, the trial court issued an opinion explaining its rationale for denying Ridley Park's post-trial motion.

Ridley Park presents five issues for our review:

1. Should a new trial be granted where the trial court refused to submit the negligence of [Harper Associates] to the jury even though the tree that fell and injured [Dunlap] was owned by [Harper Associates], was located on property owned and possessed exclusively by [Harper Associates], and where [Harper Associates] freely admitted that [it] failed to inspect and maintain the tree and the property on which it was located?

2. Should a new trial be granted where the terms of a *pro rata* joint tortfeasor release required that [Harper Associates'] liability be determined and apportioned by the jury at trial?

3. Should a new trial be granted where the trial court refused to permit the jury to apportion any fault to [Harper Associates] even though [it] had already been adjudged as negligent in the course of a binding arbitration?

4. Should a new trial be granted where the trial court abused its discretion by refusing to permit [Ridley Park]'s counsel to cross-examine [O'Donel] regarding the contents of his earlier undisclosed report in which he concluded that [Harper Associates was] solely responsible for [Dunlap]'s accident?

5. Should a new trial be granted where the trial court abused its discretion by permitting [O'Donel] to testify even though his report was produced in blatant violation of the [trial c]ourt's [s]cheduling [o]rder?

Ridley Park's Brief at 4-5.

In its first issue, Ridley Park argues that the trial court erred by not submitting Harper Associates' alleged negligence to the jury.[2]  We review a

---

[2] In her brief, Dunlap implicitly argues that Ridley Park waived this issue for failing to cite a specific case to the trial court and failing to seek a jury instruction on Harper Associates' alleged negligence.  **See** Dunlap's Brief at 6 nn. 1-2.  We conclude that Ridley Park properly preserved this issue for our review.  Ridley Park argued extensively before the trial court that Harper Associates belonged on the verdict form.  **See** N.T., 3/19/14, at 60 (trial
*(Footnote Continued Next Page)*

claim that the trial court erred by including or excluding settling defendants on the verdict slip for an abuse of discretion. **See Hyrcza v. W. Penn Allegheny Health Sys., Inc.**, 978 A.2d 961, 968 (Pa. Super. 2009).

Our Supreme Court has held that a defendant has a right to have a settling defendant appear on the verdict form in order to apportion liability. **Davis v. Miller**, 123 A.2d 422, 424 (Pa. 1956). More recently, this Court has held that **Davis** only requires a settling co-defendant to appear on the verdict form upon showing of a *prima facie* case of negligence. **See Herbert v. Parkview Hosp.**, 854 A.2d 1285, 1290 (Pa. Super. 2004), *appeal denied*, 872 A.2d 173 (Pa. 2005). Thus, the question in this case is

---

*(Footnote Continued)*

court noting Ridley Park's standing objection to the verdict form). As the trial court determined Harper Associates would not appear on the verdict form, there was no reason to submit proposed jury instructions relating to Harper Associates' alleged negligence. We note that Ridley Park is not challenging, *per se*, a specific jury instruction on appeal but, instead, raises a broader claim concerning the propriety of placing Harper Associates' negligence before the jury in passing on Ridley Park's role in causing Dunlap's injuries. Furthermore, there is no requirement that a litigant cite a specific case to the trial court in order to argue its applicability on appeal. Instead, a litigant is only required to make the same substantive argument to the trial court as on appeal in order to preserve the issue. **Cf. Pa. Liquor Control Bd. v. Willow Grove Veterans Home Ass'n**, 509 A.2d 958, 961 (Pa. Cmwlth. 1986), *disapproved on other grounds*, **In re Borough of Churchill**, 575 A.2d 550 (Pa. 1990) (Under Rule 302(a) "[a]n 'issue' is a disputed point or question on which parties to an action desire the court to decide."). In this case, Ridley Park raised the substance of its argument to the trial court, *i.e.*, that Harper Associates should appear on the verdict form. Accordingly, Ridley Park preserved this issue for our review.

whether Ridley Park made a *prima facie* showing of Harper Associates' negligence.[3]

The trial court held that Ridley Park failed to prove its *prima facie* case. Trial Court Opinion, 12/10/14, at 2. It reasoned that, in order to prove its *prima facie* case, Ridley Park was required to call an expert witness to testify that Harper Associates was negligent. **See** N.T., 3/19/14, at 41. The trial court also concluded that the area in question was a "jungle" and, therefore, there was no legal duty for Harper Associates to inspect the tree. **See** N.T., 7/20/14, at 59.

Dunlap argues that Ridley Park failed to prove its *prima facie case* of negligence. Like the trial court, Dunlap argues that Ridley Park was required to present expert testimony that there was a duty for Harper Associates to inspect the tree, that Harper Associates breached that duty, and that Harper Associates' breach of duty was the proximate cause of Dunlap's injuries. Dunlap argues that Ridley Park failed to present such expert testimony and, therefore, it failed to prove its *prima facie* case. Ridley Park, on the other hand, argues that it was not required to present expert testimony relating to Harper Associates' negligence. Furthermore, Ridley Park argues that, even if

---

[3] Dunlap argues that Ridley Park never seriously pursued its cross-claim against Harper Associates. A cross-claim, however, was not necessary to seek apportionment of responsibility. **Herbert**, 854 A.2d at 1290, *citing* **Nat'l Liberty Life Ins. Co. v. Kling P'ship**, 504 A.2d 1273, 1277-1278 (Pa. Super. 1986).

- 6 -

it were required to present expert testimony against Harper Associates, Dunlap's expert witnesses provided such expert testimony.

It is hornbook law that a *prima facie* case of "[n]egligence is established by proving the following four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." **Grossman v. Barke**, 868 A.2d 561, 566 (Pa. Super. 2005), *appeal denied*, 889 A.2d 89 Pa. 2005) (internal quotation marks and citation omitted). Our Supreme Court has held that expert testimony is required when the subject matter of the negligence is outside the skill and knowledge of an ordinary layman. **Young v. Commw., Dep't of Transp.**, 744 A.2d 1276, 1278 (Pa. 2000) (citations omitted).

We first consider whether there was a duty for Harper Associates to examine the tree and, if so, whether expert testimony was necessary to reach that conclusion. We conclude that Harper Associates possessed a duty to visually inspect the tree and that no expert testimony was required to reach this conclusion. In **Barker v. Brown**, 340 A.2d 566 (Pa. Super. 1975), this court held

> that a possessor of land in or adjacent to a developed or residential area is subject to liability for harm caused to others outside of the land by a defect in the condition of a tree thereon, if the exercise of reasonable care by the possessor (a) would have disclosed the defect and the risk involved therein, and (b) would have made it reasonably safe by repair or otherwise. The reasonable care standard encompasses, at least, a duty to make a visual inspection. Under some circumstances it may

encompass more. If the possessor of land in or adjacent to a developed area knows, or should know, through inspection or otherwise, that a defect in one of his trees poses an unreasonable danger to others outside of the land, he is under a duty to eliminate that danger.

*Id.* at 569 (internal citations and paragraph breaks omitted).

Under **Barker**, a landowner has, at a minimum, the duty to visually inspect trees next to a developed or residential area. No expert opinion was necessary to establish the duty to visually inspect the trees. As noted in **Barker**, in some instances a landowner's duty extends beyond visual inspection of trees. Under the circumstances of this case, expert testimony is necessary to impose a greater duty. Ridley Park's strategic decision, however, to forgo pursuit of an enhanced duty does not mean it failed to prove that Harper Associates had a duty to inspect visually. Instead, it merely reflects Ridley Park's decision to proceed on the lower standard announced in **Barker**.

Dunlap argues that **Barker** is inapposite because the area of the Harper property where the tree was located is undeveloped. **Cf. Murtha v. Joyce**, 875 A.2d 1154, 1159–1160 (Pa. Super. 2005) (a property can include both developed and undeveloped portions). **Barker**, however, does not focus on the nature of the land on which the tree is located. Instead, it focuses upon the adjacent land. This is evident not only by the plain language of the holding, quoted above, but also by the preceding paragraph. **See Barker**, 340 A.2d at 569 ("That tree, once growing in the midst of a

forest, is no longer the same 'natural object' when a city grows around it or residential areas are developed in proximity to it."). Thus, under *Barker*, the question is whether Ridley Park's property is developed or undeveloped.

We conclude that the parking lot on Ridley Park's property is developed land. *See Murtha*, 875 A.2d at 1159-1160 (making a legal determination as to whether land was developed or undeveloped); *see also Drusedum v. Guernaccini*, 380 A.2d 894, 895 (Pa. Super. 1977) (parking lot was developed); *Norfolk S. Ry. Co. v. Pub. Util. Com'n*, 971 A.2d 545, 548 (Pa. Cmwlth. 2009) (same). As the parking lot was developed, and *Barker* holds that a property owner has a duty to at least visually inspect trees that abut developed property, Ridley Park made a *prima facie* showing that Harper Associates had a duty to visually inspect the subject tree.[4]

Furthermore, even if expert testimony were required to show Harper Associates possessed a duty to visually inspect the trees, Dunlap's own experts provided such testimony. Dunlap called Howard L. Eyre ("Eyre"), whom the trial court qualified as an expert witness in arboriculture and related topics. N.T., 3/18/14, at 61. Eyre testified:

---

[4] Dunlap argues that expert testimony was necessary to establish that a tree 25 feet from the property line should have been inspected. *Barker*, however, makes no such qualifications. Instead, under *Barker*, a tree must be inspected if it could fall and damage property or injure persons located on adjacent developed or commercial real estate. The tree falling and injuring Dunlap shows that the tree was close enough to the property line to fall and injure an individual on Ridley Park's land.

- 9 -

Well, any tree in a situation like that needs to be regularly observed. It's on a boundary between two properties. Both owners would have a responsibility to see what's going on at that location. And when you have a situation where grapevines are beginning to load up the plants then they're [sic] becomes a real responsibility to care for the trees in a way that they're not being - people have to circulate on the site.

*Id.* at 79. Moreover, O'Donel was asked if he "agree[d] that this particular tree that we're talking about was such a tree that required the owner of that tree to inspect it for hazardous conditions of that tree?" *Id.* at 148. O'Donel responded "It could be, yes." *Id.*

Dunlap's arboriculture and facilities management experts, therefore, testified that Harper Associates had a duty to, at a minimum, visually inspect the subject tree. As discussed more fully *infra*, when expert testimony is necessary to prove a *prima facie* case, the expert need not be called by the party relying upon that testimony. Thus, even if expert testimony were required to prove Harper Associates possessed a duty to visually inspect the tree, O'Donel and Eyre's testimony satisfied this requirement.

Having determined that Ridley Park made a *prima facie* showing that Harper Associates possessed a duty to inspect the subject tree, we turn to whether Ridley Park made a *prima facie* showing that Harper Associates breached that duty. There was no need for expert testimony on this question. Whether a tree was visually inspected is not a question that requires specialized knowledge or training. At trial, one of Harper

- 10 -

Associates' principals testified that Harper Associates never visually inspected the subject tree. N.T., 3/18/14, at 29-30. From this testimony alone, the jury could have determined that Harper Associates breached its duty to visually inspect the trees adjacent to the Ridley Park property. **See also** Dunlap's Brief at 6 n.3 ("It is agreed that Harper [Associates] did not inspect the subject tree prior to June 24, 2009.").

Next, we consider whether Harper Associates' alleged breach caused the subject tree to fall.[5] For this question, we agree with the trial court and Dunlap that expert testimony was required. It requires specialized knowledge and training to determine if the tree, when it fell, was in such condition that visual inspection alone should have revealed a problem. Thus, we turn to whether there was sufficient expert testimony presented from which the jury could determine that Harper Associates' alleged breach caused the subject tree to fall.

We first note that it is appropriate for Ridley Park to rely upon expert testimony offered by Dunlap's expert. **Herbert**, 854 A.2d at 1290 (evidence

---

[5] To the extent that Dunlap argues Ridley Park is judicially estopped from arguing that the defect in the subject tree would have been found with a visual inspection, **see** Dunlap's Brief at 6 n.4, that argument is without merit. "Pursuant to the doctrine of judicial estoppel, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained." **Newman Dev. Group of Pottstown, LLC v. Genuardi's Family Mkt., Inc.**, 98 A.3d 645, 656 (Pa. Super. 2014) (*en banc*), *appeal denied*, 676 MAL 2014 (Pa. June 24, 2015) (internal quotation marks and citation omitted). In this case, Ridley Park's argument was not successful in the trial court. Thus, judicial estoppel does not apply.

was sufficient for settling defendant to appear on verdict slip based upon plaintiff's expert's testimony); *see Lombardo v. Gardner*, 82 Pa. D. & C.4th 233, 243-244 (C.C.P. Lawrence 2007); *Kol v. Trinh*, 2005 Phila. Ct. Com. Pl. LEXIS 347, *8-10 (June 27, 2005), *aff'd*, 902 A.2d 988 (Pa. Super. 2006) (unpublished memorandum).

Eyre, Dunlap's expert, testified:

> I think if a non-professional looked at the tree the tree itself might have looked alive. But you have to take it in context with the whole site. And if you look at photograph 90 where it shows that the vines are already pulling down another part of the tree, I think even to a lay-person that does not look normal.

N.T., 3/18/14, at 91. Eyre later testified that "the grapevine pulling down on the limbs of other trees and putting pressure on the trees, downward pressure" would have been "easily observed" by a lay person. *Id.* at 101.[6]

We acknowledge that testimony elicited from two witnesses contradicts Eyre's testimony. Specifically, John Cardow ("Cardow"), Ridley Park's president at the time of the incident, testified that he viewed the tree after it fell. N.T., 3/19/14, at 84. Cardow testified that he believed the tree looked like a "[l]ive, healthy tree with tree branches and green leaves all

---

[6] Dunlap argues that Eyre "waffled" on whether a layperson would have noticed a problem with the tree during a visual inspection. *See* N.T., 3/18/15, at 92 ("The black locust stood for many years as a dead tree completely encased in grapevines that appear to the non-professional observer as being a live, healthy tree."). This, however, was a quote from Eyre's expert report. In his live testimony, Eyre indicated that a layperson would have noticed a problem with the tree. Thus, Eyre's testimony presented a credibility question for the jury to determine.

over the parking lot." ***Id.*** at 85. He further testified that he parked in the lot where the tree fell, yet he "didn't notice any trees that seemed like they would be a problem." ***Id.*** at 89; ***see also id.*** at 100-101 (Cardow disagreed with Eyre's conclusion that the subject tree was dead). Finally, at his deposition (a transcript of which was read at trial), Cardow testified that he checked the trees on the Harper property on a monthly basis for the previous six or seven years. N.T., 3/18/14, at 23. He testified that on approximately six occasions he found trees he believed to be dangerous. ***Id.*** The tree that fell and injured Dunlap, however, was not one of the trees that Cardow found to be in a dangerous condition. ***Id.*** Similarly, Harper Associates' principal testified that he viewed the tree after it fell and believed it to be healthy. ***Id.*** at 36.

Consistent with the foregoing testimony, the jury could have reasonably found, that even if Harper Associates visually inspected the subject tree it would not have noticed the tree was a danger to individuals on Ridley Park's property. The conflict in the testimony, however, was a factual question that must be decided by the jury. The evidence was not such that the trial court could determine, as a matter of law, that Harper Associates' failure to visually inspect the subject tree was not the proximate cause of the tree falling. Ridley Park, therefore, made a *prima facie* showing, based upon Eyre's testimony, that Harper Associates would have (or should have) noticed the subject tree was a danger if it visually

inspected the tree prior to the incident. Finally, it is undisputed that the fallen tree caused Dunlap's injuries.

We therefore conclude that Ridley Park made a *prima facie* showing that Harper Associates was negligent. Thus, the trial court abused its discretion by not including Harper Associates on the verdict form and permitting the jury to apportion responsibility between Ridley Park and Harper Associates. This error clearly prejudiced Ridley Park because, if the jury determined that Harper Associates bore some responsibility for Dunlap's injuries, the damage award would have been reduced in accordance with the *pro rata* joint tortfeasor release. Thus, Ridley Park is entitled to a new trial. Having determined that Ridley Park is entitled to a new trial, we need not address its remaining issues. **See Banohashim v. R.S. Enters., LLC**, 77 A.3d 14, 27 n. 6 (Pa. Super. 2013), *quoting* **Commonwealth v. Oakes**, 392 A.2d 1324, 1326 (Pa. 1978) ("The grant of a new trial wipes the slate clean of the former trial.").

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015