J. John **MARSHALL** and **Marjorie Marshall, Appellants,**

v.

**ERIE INSURANCE EXCHANGE a/s/o Cindy Cain, Appellee.**

No. 20A03–0908–CV–366.

Court of Appeals of Indiana.

March 10, 2010.

20

Donald E. Wertheimer, South Bend, IN, Attorney for Appellants.

Gregory J. Haines, Rowe & Rowe, South Bend, IN, Attorney for Appellees.

## OPINION

ROBB, Judge.

*Case Summary and Issue*

John and Marjorie [1] Marshall appeal the trial court's denial of their motion to correct error following its judgment in favor of Erie Insurance Exchange ("Erie") on Erie's claims for damages resulting from the Marshalls' negligent maintenance of a tree located on their property, which fell and damaged the home of Cindy Cain. For

---

1. Marjorie passed away after the conclusion of the bench trial but before the trial court issued its judgment.

our review, the Marshalls raise five issues, which we consolidate and restate as whether the trial court abused its discretion when it denied their motion to correct error. Concluding the trial court did not abuse its discretion, we affirm.

*Facts and Procedural History*

John and Marjorie owned many properties, some individually and some jointly. In addition, John and Marjorie are partners in a business known as Multivest Properties, which manages rental properties.[2] John routinely made management decisions regarding properties owned by Marjorie especially after Marjorie became seriously ill early in 2006. For example, when contacted by the City of Elkhart regarding the need to clean up debris on a particular property, John would often take care of the issue without checking to see whether it was he or Marjorie who actually owned the lot. John admitted he could not tell whether he or Marjorie or both of them owned a particular property without checking the property records.

Marjorie owned a vacant lot located next to Cain's home in Elkhart. A tree stood near the boundary of the two lots on Marjorie's property. From the time she purchased the home Cain had concerns about the health of the tree and the danger it posed to her home. Cain telephoned Elkhart code enforcement officer Mayfield Timmons regarding her concerns about the tree. Timmons determined the tree was likely located on Marjorie's property and contacted Marjorie's property manager to inform him the tree needed to be taken down. Timmons also spoke directly with John. John told Timmons he would have someone look at the tree and would

get back to Timmons. Cain also informed a man who claimed to be the Marshalls' maintenance worker and a woman who claimed her husband was the Marshalls' new maintenance worker about her concerns regarding the tree. The man Cain spoke to agreed the tree should be taken down and told her he would speak with John about it.

Jake Denlinger, a professional arborist, testified John asked him to look at the tree on Marjorie's vacant lot. Denlinger inspected the tree visually but did not take any samples of the tree's core. Denlinger testified he did not see enough evidence of decay in the tree to warrant removing the tree. After his initial testimony in the case, Denlinger returned to the vacant lot to look at the tree stump so he could determine what type of tree had fallen on Cain's house. Denlinger testified again later in the trial, stating the tree was a Basswood tree. Denlinger further testified it is difficult to judge the health of a Basswood tree without internal sampling because the trees do not show many exterior signs of decay. John did not contact Timmons after having Denlinger look at the tree.

On December 31, 2006, the tree fell onto Cain's house knocking over the chimney and causing damage to the roof and structure of the house. Cain filed an insurance claim with Erie, which held her homeowner's insurance policy. Erie reimbursed Cain for the necessary repairs to her home minus Cain's deductible. Thereafter, Erie, acting as a subrogee for Cain, brought suit against the Marshalls for damages stemming from the Marshalls' negligent maintenance of the tree.[3] Erie

---

2.  The record does not disclose the exact nature of the business relationship, but it is unlikely Multivest was directly associated with the property at issue here both because the property was titled solely in Marjorie's

name and because the property is a vacant lot rather than a rental property.

3.  Erie initially filed suit against John only but later amended the suit to include Marjorie

served notice upon Marjorie by first class mail addressed to the post office box number listed on the tax records for the vacant lot. John's counsel entered his appearance on behalf of Marjorie and filed Marjorie's answer to Erie's amended complaint.

The trial court conducted a bench trial on November 12, 2008, and January 7, 2009, after which it allowed the parties to file written closing arguments and took the matter under advisement. On February 2, 2009, Marjorie passed away. On March 11, 2009, the trial court entered its judgment in favor of Erie. The Marshalls filed a motion to correct error on April 13, 2009, arguing inter alia: the trial court erred by failing to address the issue of insufficient service of process upon Marjorie; the trial court erred in finding the Marshalls owed a duty of care to Cain; the trial court erred in finding the Marshalls breached a duty of reasonable care; and the trial court erred by assigning liability to John. The trial court held a hearing on the motion to correct error on May 21, 2009,[4] and subsequently denied the motion on May 26, 2009. The Marshalls now appeal.

*Discussion and Decision*

I. Standard of Review

We review a trial court's denial of a motion to correct error for an abuse of discretion. *Principal Life Ins. Co. v. Needler*, 816 N.E.2d 499, 502 (Ind.Ct.App. 2004). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or when the trial court has misinterpreted the law." *Pfaffenberger v. Jackson County Reg'l Sewer Dist.*, 785 N.E.2d 1180, 1183 (Ind. Ct.App.2003).

The Marshalls raised several issues in their motion to correct error, which they also present in this appeal. We address the relevant issues in turn below.

II. Issues in the Marshalls'
Motion to Correct Error

A. Sufficiency of Service of
Process Upon Marjorie

■ The Marshalls argue Erie never achieved effective service of its complaint upon Marjorie, and therefore, the trial court lacked personal jurisdiction over her. Indiana Trial Rule 4 provides the trial court with jurisdiction over a party or person who "is served with summons or enters an appearance." Trial Rule 4.1 allows service upon an individual to be accomplished by "sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to [the individual's] residence, place of business [,] or [place of] employment with return receipt requested and returned showing receipt of the letter."

■ Service of process was made to Marjorie at the post office box address listed on the tax records for the vacant lot. John testified the post office box was the mailing address for Multivest Properties, the couple's rental business. Therefore, Erie properly mailed the summons and complaint to Marjorie's place of business. However, the Marshalls argue Marjorie never personally received service of process and John was not authorized to receive service as her agent. Under Indiana law, service by mail is effective even if someone other than the intended recipient ultimately signs the return receipt. *See Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind.Ct.App.1994). The

---

apparently after learning the property was titled in Marjorie's name.

4. The record does not contain a transcript of the hearing.

return receipt indicating the service of process was received at the proper post office box number was signed by an unidentified party.

In addition, Marjorie's attorney entered an appearance on her behalf and filed an answer. Although Marjorie's counsel raised the issue of improper service in her answer and mentioned it to the trial court prior to the beginning of the trial, counsel did not file a motion to dismiss for lack of personal jurisdiction or argue the issue to the trial court. Thereafter, counsel participated fully in the trial, although Marjorie was unable to personally attend due to her failing health. Therefore, Erie achieved effective service of process upon Marjorie, and the trial court obtained personal jurisdiction over Marjorie thereby. As a result, the trial court did not abuse its discretion when it denied the Marshalls' motion to correct error.

### B. Existence of a Duty

██ To recover in negligence, a plaintiff must establish:

(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure on the part of the defendant to conform his conduct to the requisite standard of care; and (3) an injury to the plaintiff proximately caused by the breach.

*Patterson v. Seavoy,* 822 N.E.2d 206, 211 (Ind.Ct.App.2005).

██ Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Id.* In general, the existence of a duty is a question of law for the court to decide. *Id.* at 212. Surprisingly, this case presents an issue of first impression regarding whether an urban or residential landowner owes a duty to protect neighbors from damage caused by a tree which falls from the landowner's property. In *Valinet v. Eskew,* our supreme court adopted the Restatement (Second) of Torts section 363 (the "Restatement rule"), which states:

(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

574 N.E.2d 283, 285 (Ind.1991).

At first glance, then, it would seem the Restatement rule forecloses the issue of whether the Marshalls owed a duty to protect Cain from the fallen tree.[5] However, to so hold would leave urban or residential landowners essentially powerless in the face of a neighbor who refused to remove or secure an obviously decayed and dangerous tree simply because it was a natural condition of the land. With this in mind, several of our sister states have retreated from a strict application of the Restatement rule when an urban or residential landowner has actual or constructive knowledge of a dangerous condition. *See, e.g., Lewis v. Krussel,* 101 Wash.App. 178, 2 P.3d 486, 491 (2000) ("a possessor or owner of urban or residential land who has actual or constructive knowledge of defective trees is under a duty to take corrective action for the protection of [a neighbor] on adjacent land"), *rev. denied,* 142 Wash.2d 1023, 11 P.3d 826 (Wash.2000);

---

5. For the sake of this argument, we will assume the tree was a natural condition because Erie did not present any evidence to suggest otherwise.

*Ivancic v. Olmstead,* 66 N.Y.2d 349, 497 N.Y.S.2d 326, 488 N.E.2d 72, 73 (N.Y.1985) ("no liability attaches to a landowner whose tree falls outside of his premises and injures another unless there exists actual or constructive knowledge of the defective condition of the tree"), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 658 (1986); *Mahurin v. Lockhart,* 71 Ill.App.3d 691, 28 Ill.Dec. 356, 390 N.E.2d 523, 524–25 (1979) ("a landowner in a residential or urban area has a duty to others outside of his land to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on the premises, including trees of purely natural origin"); *Barker v. Brown,* 236 Pa.Super. 75, 340 A.2d 566, 569 (1975) ("a possessor of land in or adjacent to a developed or residential area is subject to liability for harm caused to others outside of the land by a defect in the condition of a tree thereon, if the exercise of reasonable care by the possessor (a) would have disclosed the defect and the risk involved therein, and (b) would have made it reasonably safe by repair or otherwise").

We agree with the reasoning of our sister states in departing from the strict application of the Restatement rule in the context of urban or residential property. The Restatement rule developed when land was mostly unsettled and uncultivated. *See Mahurin,* 28 Ill.Dec. 356, 390 N.E.2d at 524. "The landowner, unable to keep a daily account of and remedy all of the dangerous conditions arising out of purely natural causes, was therefore shielded from liability out of necessity." *Id.* (citing William L. Prosser, *Handbook of the Law of Torts,* § 57 at 354–56 (4th ed.1971)). In urban or residential areas, however, it would not be an undue burden for a landowner to inspect his or her property and take reasonable precautions against dangerous natural conditions. *See*

*id.* Living in close quarters with one's neighbors in an urban or residential setting substantially increases the risk that a falling tree will cause damage to property or injury to persons, and, similar to the problem relating to a highway, the reduced size of property lots in an urban or residential setting makes the burden of time and money to inspect and secure trees on one's property relatively minor especially as compared to the potential damage that could result from the tree's fall. *See Barker,* 340 A.2d at 569. Therefore, we hold an urban or residential landowner does have a duty to protect neighbors from the risk of damage or injury caused by a falling tree.

■ We turn now to what duty an urban or residential landowner owes. Comment e to subsection 2 of the Restatement rule states the duty a landowner owes to motorists on an adjacent public highway as:

> no more than reasonable care ... to prevent an unreasonable risk of harm to those in the highway, arising from the condition of the trees. In an urban area, where traffic is relatively frequent, land is less heavily wooded, and acreage is small, reasonable care for the protection of travelers on the highway may require the possessor to inspect all trees which may be in such dangerous condition as to endanger travelers. It will at least require him to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree.

Illinois and Pennsylvania have adopted a similar duty of reasonable care. *See Mahurin,* 28 Ill.Dec. 356, 390 N.E.2d at 525; *Barker,* 340 A.2d at 569. We agree with their reasoning and extend our supreme court's ruling in *Valinet,* which applied to the duty owed to passing motorists, and

hold that an urban or residential landowner has a duty to exercise reasonable care to prevent an unreasonable risk of harm to neighboring landowners, arising from the condition of trees on his or her property. Whether the land in question is of sufficient population density to invoke the rule is a factual question for the fact finder. *Valinet,* 574 N.E.2d at 285. In addition, in determining whether the landowner exercised the requisite reasonable care, the fact finder must weigh the seriousness of the danger against the ease with which it may have been prevented. *Id.* In some circumstances, fulfilling this duty may require a landowner to conduct periodic inspections of his or her property. *Id.*

The trial court, here, applied a duty of reasonable care to the Marshalls with respect to preventing the damage caused by the fallen tree. In light of our holding above, the trial court properly applied a duty of reasonable care to the Marshalls, and therefore, it did not abuse its discretion when it denied the Marshalls' motion to correct error.

### C. Breach of Duty

■■■■■■ "If a duty of care exists, the determination of whether a breach of duty occurred is a factual question requiring an evaluation of the landowner's conduct with respect to the requisite standard of care." *Douglass v. Irvin,* 549 N.E.2d 368, 370 (Ind.1990). If the facts are in dispute or if reasonable minds could draw different conclusions from undisputed facts, then the question of negligence is one for the trier of fact. *Harris v. Traini,* 759 N.E.2d 215, 223 (Ind.Ct.App.2001) (quoting *Lincoln Operating Co. v. Gillis,* 232 Ind. 551, 114 N.E.2d 873, 875 (1953)), *trans. denied.*

The trial court heard evidence that code enforcement officer Timmons contacted the Marshalls to inform them of the dangerous nature of the tree and the need to remove it. In addition, the trial court heard testimony from several eye witnesses regarding the physical state of the tree and opinions as to the tree's state of decay. In rebuttal, the Marshalls provided evidence they contacted a tree specialist who did a superficial examination of the tree but did not recommend its removal. Because reasonable minds could draw different conclusions from the facts in evidence, it is for the trial court to determine whether the Marshalls' conduct breached the duty of reasonable care. We will not reweigh the evidence or judge the credibility of witnesses, and we will sustain the trial court's judgment on any theory consistent with the evidence. *Brennan v. Hall,* 904 N.E.2d 383, 386 (Ind.Ct.App. 2009). Sufficient evidence supports the trial court's judgment that the Marshalls breached their duty of reasonable care with respect to Cain. Therefore, the trial court did not abuse its discretion when it denied the Marshalls' motion to correct error.

### D. Assignment of Liability to John

■■■■ Finally, the Marshalls argue the trial court erred when it assigned joint and several liability to John, who had no personal interest in the vacant lot. The evidence is undisputed that Marjorie owns the lot in her personal capacity and John had no ownership interest in the lot. However, the evidence is also undisputed that John managed the lot on Marjorie's behalf at least during 2006, when Marjorie became seriously ill. John hired and supervised the property maintenance person, and John communicated with Timmons regarding the condition of the lot and the tree. Thus, John acted as Marjorie's agent in the care of the vacant lot.

Generally, "[a]n agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon

performance of the duties by the agent, or unless the agent has taken control of land or other tangible things." *Greg Allen Constr. Co. v. Estelle*, 798 N.E.2d 171, 174 (Ind.2003) (quoting Restatement (Second) of Agency, § 352 (1958)). Here, both exception conditions are met. John's testimony indicates he had taken control of the vacant lot with respect to its maintenance and upkeep. In addition, John specifically agreed to take action to address Timmons's concerns about the health of the tree. Cain relied upon John's performance of his duties as Marjorie's agent in addressing the danger posed by the decaying tree and sustained physical harm to her property as a result of John's failure to adequately protect her from that danger. Therefore, John is equally liable for his own negligence along with Marjorie. *See Tolliver v. Mathas*, 538 N.E.2d 971, 976 (Ind.Ct.App.1989) ("An agent who commits a tortious act is equally liable with the principal.") Therefore, the trial court properly found John jointly and severally liable and did not abuse its discretion when it denied the Marshalls' motion to correct error.

*Conclusion*

The trial court properly concluded Erie's service of its complaint upon Marjorie was sufficient, and the Marshalls owed a duty of reasonable care to protect Cain from harm caused by a tree falling from their property. In addition, sufficient evidence supports the trial court's finding that the Marshalls breached their duty of reasonable care. Finally, the trial court properly found John jointly and severally liable for his own negligence. As a result, the trial court did not abuse its discretion when it denied the Marshalls' motion to correct error, and the judgment of the trial court is affirmed.

Affirmed.

BAKER, C.J., and BAILEY, J., concur.