Phyllis **WOODSMALL**, Joseph **Bush**, Becky **Bush**, Janet **Gard**, William **Marr**, Susan **Marr**, Bill **Mitchell**, Judy **Robinson**, Charles **Schlunt**, Janet **Schlunt**, Jerry **Schooley**, Denise **Sobieski**, Terry **Taylor**, and Bill **Thomson**, **Appellants–Plaintiffs,**

v.

**LOST CREEK TOWNSHIP CONSERVATION CLUB, INC.,**
**Appellee–Defendant.**

**No. 84A01–1001–PL–33.**

Court of Appeals of Indiana.

Sept. 15, 2010.

Rehearing Denied Nov. 10, 2010.

Leslie C. Shively, Shively & Associates, P.C., Evansville, IN, Attorney for Appellants.

James O. McDonald, Everett, Everett & McDonald, Terre Haute, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Phyllis Woodsmall, Joseph Bush, Becky Bush, Janet Gard, William Marr, Susan Marr, Bill Mitchell, Judy Robinson, Charles Schlunt, Janet Schlunt, Jerry Schooley, Denise Sobieski, Terry Taylor, and Bill Thomson (collectively, "the Homeowners") appeal a negative judgment upon their nuisance claim against Lost Creek Township Conservation Club, Inc. ("Lost Creek"). We affirm.

### Issue

The Homeowners present a single issue: whether the judgment is contrary to law.[1]

### Facts and Procedural History

Lost Creek is a not-for-profit organization that operates a shooting range in a rural area of Vigo County, Indiana. The shooting range, which now includes a rifle range and a pistol range, has been operational in some form since 1934. In 1972, a Vigo County trial court issued a decree

---

1. The Homeowners assert that several of the findings are not supported by evidence of record. However, if a party with the burden of proof suffers a negative judgment, he is precluded from attacking the judgment on insufficiency of the evidence. *Hays v. Hartfield L–P Gas,* 159 Ind.App. 297, 299, 306 N.E.2d 373, 375 (1974).

restricting skeet and trap shooting at Lost Creek premises to certain times and days and banning "any shooting whatsoever" past 10:30 p.m. (Pl. Ex. 1)

Shooting activities at Lost Creek increased after September 11, 2001, when members of Vigo County's law enforcement lost the use of the shooting range at the nearby federal penitentiary and began to use the ranges at Lost Creek. On July 17, 2007, the Homeowners filed a complaint for injunctive relief to abate a nuisance. Specifically, the Homeowners requested a restriction such that there would be no rifle or pistol fire at Lost Creek[2] or, alternatively, that shooting activities cease pending compliance with all safety recommendations made by Lost Creek's expert witness.

On December 1 and 2, 2009, a bench trial was conducted. On January 25, 2010, the trial court entered its Findings of Fact, Conclusions of Law and Judgment denying the Homeowners injunctive relief. This appeal ensued.

### Discussion and Decision

#### I. Standard of Review

The trial court issued findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. Trial Rule 52(A) provides that on appeal of claims tried to the bench, "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

■ We apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Atterholt v. Robinson,* 872

N.E.2d 633, 638–39 (Ind.Ct.App.2007). Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them and the judgment is clearly erroneous if it is unsupported by the findings and conclusions thereon. *Id.* at 639. In assessing whether findings are clearly erroneous, we will not reweigh the evidence. *Id.* Instead, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* A finding or conclusion is clearly erroneous when our review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We defer to the trial court's findings of fact, but do not defer to its conclusions as to the applicable law. *Id.*

■ We define the clearly erroneous standard based upon whether the party is appealing a negative judgment or an adverse judgment. *Fowler v. Perry,* 830 N.E.2d 97, 102 (Ind.Ct.App.2005). When, as here, the party who had the burden of proof at trial appeals, the party appeals from a negative judgment and will prevail only if he establishes that the judgment is contrary to law. *Id.* A judgment is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead to only one conclusion, but the trial court reached a different conclusion. *Id.*

#### II. Analysis

The Homeowners assert that undisputed evidence established that the shooting activities at Lost Creek interfered with the quiet enjoyment of the Homeowners as to their properties and that the activities should not continue unabated because of the potential for serious harm. Lost Creek contends that the evidence is not

---

**2.** The Homeowners proposed that trap and skeet shooting would be allowed only on Wed- nesdays and alternate Sundays.

uncontroverted in the Homeowners' favor; rather, the Homeowners failed to meet their burden of proof.

 In Indiana, nuisances are defined by statute. Indiana Code Section 32–30–6–6 defines an actionable nuisance as: "Whatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property[.]" A public nuisance is that which affects an entire neighborhood or community while a private nuisance affects only one individual or a determinate number of people. *Wernke v. Halas,* 600 N.E.2d 117, 120 (Ind.Ct.App.1992). A private nuisance arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property. *Id.*

 A nuisance may be a nuisance per se, something which cannot be lawfully conducted or maintained (such as a house of prostitution or an obstruction encroaching upon a public highway) or may be nuisance *per accidens,* where an otherwise lawful use may become a nuisance by virtue of the circumstances surrounding the use. *Id.* Whether something is a nuisance per se is a question of law, and whether something is a nuisance *per accidens* is a question for the trier of fact. *Id.*

 Here, the Homeowners' complaint concerned a legal use of land that affected a finite number of people; thus, they alleged a private, *per accidens nuisance.* "[T]he relevant inquiry is whether the thing complained of produces such a condition as in the judgment of reasonable persons is naturally productive of actual physical discomfort to persons of ordinary

sensibility, tastes, and habits." *Wendt v. Kerkhof,* 594 N.E.2d 795, 797 (Ind.Ct.App. 1992), *trans. denied.*

 The Homeowners' claims concerned excessive noise and unsafe travel of bullets.[3] As for noise, at least one of the Homeowners reported feeling anxious after hearing sounds of gunfire. One of the Homeowners reported that "shots whizzed by" in 2006. (Tr. 61.) One maintained a recent log detailing some occasions of "repeated rapid fire shots." (App. 514.) However, the evidence is not without conflict as to whether the Homeowners were subjected to that which was naturally productive of actual physical discomfort. The decibel level was not addressed in the evidence adduced. As stated by the trial court, a videotape submitted into evidence for the purpose of documenting the alleged nuisance showed a duck continuing to swim undisturbed in the lake beside the Woodsmall home. Also, one of the Homeowners who testified to having heard a shot did not stop to investigate but had continued on with his yard work.

The Homeowners vigorously contend that they established the presence of errant bullets on some of the Homeowners' properties and thus the trial court could not have reached a conclusion other than that an unsafe nuisance was being maintained by Lost Creek. However, the evidence does not definitively establish that Lost Creek is a source of a hazard to the Homeowners. First, there is evidence from which a factfinder could infer that shooting in the heavily wooded area near the Homeowners is not limited to Lost Creek members and visitors. Phyllis Woodsmall testified that "a couple times a year" she heard shooting from an area

---

**3.** The rifle and pistol ranges were bordered by "high spoil banks" that the Homeowners considered inadequate to stop bullets. (Tr. 53.)

The spoil banks at issue consisted of refuse dirt and rocks left after strip mining.

other than Lost Creek. (Tr. 58.) Lost Creek President Danny Favor testified to his belief that a nearby plumbers and steamfitters organization also engaged in trap and skeet shooting in their park area.

Second, the trial court heard expert evidence that, should a bullet escape the confines of the shooting range, it would be at a height and trajectory such that it posed no danger upon falling to the ground. Indeed, none of the Homeowners testified to property damage or physical injury. One of the Homeowners had heard a "ping" and suspected a bullet, but she and her husband were unable to locate a place on the house that appeared to have been struck by a bullet. (Tr. 198.) Another of the Homeowners reported hearing a shot, and four or five days later her husband found a spent bullet lying on the back deck. Its origin was not determined.

██ A condition that reasonably causes a landowner to be in "constant fear for the safety of his life or property is such a serious interference so as to constitute a nuisance." *Hays v. Hartfield L–P Gas,* 159 Ind.App. 297, 301, 306 N.E.2d 373, 376 (1974). Nonetheless, to be reasonably justified, a plaintiff's fear must be based upon more than speculation. *See id.* at 302, 306 N.E.2d at 376 (observing that "mere fear or apprehension of danger caused by the presence of fuel storage tanks, without more, is not a sufficient basis to establish a nuisance.")

██ Steven Hose, a former firearms instructor for the Indiana State Police, testified that he had examined the Lost Creek pistol and rifle ranges and had formed the opinion that the premises were safe for the caliber of weapons being discharged there. He testified that it was "possible" for a bullet to drop, "possibly striking the house or building nearby," but that his calculations indicated that the power of the expended bullet would lack "enough energy to cause anybody serious injury." (Tr. 376.) The Homeowners' continued insistence that the shooting range presents an irreparable hazard to them rests upon the basic premise that their expert is credible while Lost Creek's expert utilized inaccurate data and is not credible. This is simply an invitation to assess credibility and reweigh evidence, which we cannot do. *See Atterholt,* 872 N.E.2d at 639.

Furthermore, we observe that the Homeowners' own expert (engineer David Wanninger) did not opine that Lost Creek maintained a dangerous condition. His investigation led him to conclude that, although not "likely," Winchester bullets "could potentially" reach Homeowner property. (Tr. 273.) Wanninger's deposition testimony indicated that he had found two indications on the pistol range to "substantiate the possibility that there would be some errant bullets," i.e., rocks present in the backstop from which bullets could potentially ricochet and apparent nicks in some mature trees which Wanninger "assumed could have been [caused by] a bullet." (Tr. 255.) He also opined that the rifle range backstop had bits of rock, a ricocheting hazard, in it. He found a "couple of trees" with nicks. (Tr. 258.) Even so, he did not recommend closure of the range or cessation of range activities; he suggested that "a number of measures could be undertaken" in order to "limit the noise issue" and to "improve the overall safety of the facility." (Ex. Vol. 3, pg. 302.) The evidence does not lead solely to the conclusion that Lost Creek used its property to the detriment of the Homeowners.

### Conclusion

The Homeowners failed to establish that the evidence is uncontroverted in their fa-

vor. As such, they have not demonstrated that the judgment is contrary to law.

Affirmed.

RILEY, J., and KIRSCH, J., concur.