**Stephen M. SCHECKEL,**
**Appellant–Plaintiff,**

v.

**NLI, INC., Appellee–Defendant.**

No. 02A04–1010–SC–645.

Court of Appeals of Indiana.

Aug. 9, 2011.

John B. Powell, Shambaugh, Kast, Beck & Williams, LLP, Fort Wayne, IN, Attorney for Appellant.

Jeremy J. Grogg, Lindsay M. Hurni, Burt, Blee, Dixon, Sutton & Bloom, LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Stephen M. Scheckel ("Scheckel") appeals from the trial court's order granting judgment in favor of NLI, Inc. ("NLI"), in his small claims action against NLI, the owner of adjoining real estate, for damages sustained to his property caused by the growth of a tree trunk and roots located on NLI's property. Scheckel raises the following restated issue for our review:

> Whether the trial court erred in denying Scheckel's Motion to Correct Error and granting judgment in favor of NLI, finding that NLI was not liable in either negligence or private nuisance for harm caused outside its land by the natural condition of the land.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Scheckel owns real estate located at 537 West Fifth Street in Fort Wayne, Indiana ("537 Property"). NLI owns real estate located at 543 West Fifth Street in Fort Wayne, Indiana ("543 Property"). The properties are adjacent to each other and are plotted lots within the city of Fort Wayne. A chain link fence separates the properties and is located on the 537 Property, and a walkway on Scheckel's property runs parallel to and within five feet of the fence. Scheckel had previously owned the 543 Property.

While Scheckel owned the 543 Property, there was a tree was growing near the fence towards the front of the property, but it was not in contact with the fence during his ownership. The tree eventually grew into the fence and its roots grew under the walkway, damaging both the fence and the walkway. The gate in the fence was rendered unusable, and the walkway cracked and buckled. The cost to remove the tree and repair the damage is $2,510.00.

Scheckel complained to NLI about the damage, but NLI did not take any action. Scheckel then initiated this matter by filing a complaint in the small claims division under both negligence and nuisance theories. Following a bench trial, the trial court granted judgment in favor of NLI on the grounds that the size and placement of the tree caused the damage to the fence and walkway and that a land owner is not liable for harm caused outside his land by a natural condition of the land. After the judgment of the trial court, Scheckel filed a Motion to Correct Error, which was denied. Scheckel now appeals the trial court's denial of his motion to correct error and the granting of judgment in favor of NLI.

## DISCUSSION AND DECISION

The Court of Appeals will reverse the trial court's decision to grant or deny a motion to correct error only for an abuse of discretion. *White v. White*, 796 N.E.2d 377, 379 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances, or when the trial court has misinterpreted the law. *Marshall v. Erie Ins. Exch.*, 923 N.E.2d 18, 22 (Ind.Ct.App.2010), *trans. denied.*

Scheckel contends that the trial court erred in analyzing the facts of this case under the natural condition rule. The natural condition rule arose at common law and provided that a landowner was not liable for harms caused to others outside of his land caused by a natural condition of the land. As our Supreme Court noted in *Valinet v. Eskew*, 574 N.E.2d 283, 285 (Ind.1991), the rule "arose at a time when land was largely unsettled and the burden imposed on a landowner to inspect it for safety was held to exceed the societal benefit of preventing possible harm to passersby." *Id., citing* Prosser and Keaton on Torts (5th ed.1984) § 57 at 390.

In *Valinet*, a motorist was seriously injured while driving in a storm when the storm blew a large tree onto the motorist's car. Evidence at trial showed that the tree had been dead for three to five years, had shown signs of decay for eight to twelve years and that large limbs had previously fallen from the tree onto the road. Our Supreme Court noted that "Courts have imposed liability . . . when landowners had actual knowledge of a dangerous natural condition, regardless of location," *Id.,* and adopted the exception contained in the Restatement of Torts section 363(2) ("Restatement rule"), which states:

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of the trees on the land near the highway.

*Id.*

Citing to a line of cases in which courts imposed a duty on landowners in more heavily populated areas to inspect their trees to try to prevent their posing an unreasonable risk of harm to passing motorists, the Court stated that the "rationale for imposing such a duty on urban landowners is that the risk of harm to highway users is greater and the burden of inspection on landowners is lighter in such populated areas." *Id. citing* Prosser, supra, at 391; RESTATEMENT (SECOND) OF TORTS (1965), § 363, Comment e.18.

A panel of this court recently revisited the natural condition rule and expanded on the exception recognized in *Valinet*. In *Marshall v. Erie Insurance Exchange*, the chimney, roof and structural integrity of a house were damaged when a tree from on an abutting property and near to the property line fell onto the house. The owner of the damaged house had previously raised concerns about the health of the tree and the danger that it posed to her home and a city code enforcement officer determined that the tree should be taken down.

The court stated that the natural condition rule as stated in the *Restatement* was developed when land was mostly unsettled and uncultivated and has little or no utility in an urban setting. *Marshall*, 923 N.E.2d at 24. The court stated that a landowner in an urban or residential area "has a duty to exercise reasonable care to prevent an unreasonable risk of harm to neighboring land owners, arising from the condition of trees on his or her property." *Id.* at 25. Strictly applying the Restatement rule in

these settings would leave landowners powerless in the face of a neighbor who refuses to remove or secure an obviously decayed and dangerous tree simply because it is a natural condition of the land. *Id.* at 23. As a result, Indiana, along with several of our sister states, has retreated from strictly applying the Restatement rule in urban or residential settings where the landowners have actual or constructive knowledge of the dangerous condition. *Id.* at 24.

As noted in *Marshall,* in urban or residential areas, placing a duty on the landowner to inspect his or her property and take reasonable precautions against dangerous natural conditions is not an undue burden. Property lots in urban or residential settings are much smaller in size—putting neighboring landowners much closer in proximity—and thus, the burden of time and money to inspect and secure trees on those properties is relatively minor compared to the potential damage that could result from a defective tree. As such, we hold that an urban or residential landowner has a duty to exercise reasonable care to protect neighbors from the risk of personal injury or property damage caused by a tree growing upon the landowner's property. Accordingly, the trial court erred in concluding that the natural condition rule of the Restatement bars the plaintiff's recovery.

The trial court found that the condition of the tree did not pose an unreasonable risk of harm to neighboring landowners because it was not the condition of the tree, but the placement and size of the tree that caused the damage. We disagree. To be sure, prior decisions finding an exception to the natural condition rule of the Restatement have involved injuries caused by unhealthy or dead trees falling onto an adjoining property, and the damage in the present case results from a healthy tree growing into an adjoining property; however, we see no meaningful difference between the two situations. Indeed, it may be difficult to determine whether a tree is decayed to such an extent that it poses an unreasonable risk of harm to an adjoining property owner, but a tree upon one's property that is growing into a structure on an adjoining property is readily observable. Similarly, a decayed tree falling into a structure on adjoining property may occur instantaneously and without warning, but a tree growing into such structure occurs over an extended period of time.

Applying the three-part duty analysis set out by our Supreme Court in *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991) leads us to the conclusion that a landowner in a residential or urban community owes a duty to prevent an unreasonable risk of harm to adjoining property owners or their property resulting from trees growing upon the landowner's property. The relationship, foreseeability and public policy factors all support the existence of a duty. The relationship is significant in that it is between the owners of adjoining property, and will often be that of next door neighbors. There is a high degree of foreseeability of harm where one's tree is growing into a structure on an adjoining property. Finally, the landowner is best situated to prevent or minimize the harm by trimming the tree upon the landowner's property. Accordingly, we conclude that the trial court erred in applying the natural condition rule to bar Scheckel's negligence claim.

■ Similarly, the natural condition rule does not bar Scheckel's claim under a theory of private nuisance. A nuisance is defined as whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction of the free use of property; so as essentially to interfere with the comfortable enjoyment of life

or property. Ind.Code § 32–30–6–6. A public nuisance affects an entire neighborhood or community, while a private nuisance affects only one individual or a determinate number of people. *Woodsmall v. Lost Creek Twp. Conservation Club, Inc.,* 933 N.E.2d 899, 903 (Ind.Ct.App.2010). A private nuisance arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property. *Id.*

Nuisance actions may either be nuisances *per se* (at law) or nuisances *per accidens* (in fact). A nuisance is *per se* when the use itself is unlawful. A nuisance per accidens, a nuisance in fact, is not a nuisance in itself, but becomes a nuisance by the manner in which it operates. *Hutchens v. MP Realty Group–Sheffield Square Apartments,* 654 N.E.2d 35, 38 (Ind.Ct.App.1995). In determining whether a private nuisance *per accidens* is actionable, the inquiry is whether the alleged nuisance produces such a condition that in the judgment of reasonable persons is "naturally productive of actual physical discomfort to persons of ordinary sensibility, tastes, and habits." *Woodsmall,* 933 N.E.2d at 903 (*citing Wendt v. Kerkhof,* 594 N.E.2d 795, 797 (Ind.Ct.App.1992), *trans. denied.*)

Indiana has long recognized the right of landowners to recover damages to their property caused by trees growing on an adjoining property as a private nuisance. In *Toledo, S.L. & K.C.R. Co. v. Loop,* 139 Ind. 542, 39 N.E. 306, 307 (1894), our Supreme Court held that in the event of trees growing so close to the boundary line between two properties that its branches encroach on the adjoining premises, the adjoining landowner may have an action for damages in nuisance if injury were shown. The decision in *Loop* was followed nearly forty years later by this court in *Luke v. Scott,* 98 Ind.App. 15, 187 N.E. 63, 64 (1933).

The trial court erred by applying the Restatement's natural condition rule to the facts of this case. Accordingly, we reverse its judgment in favor of NLI and remand for the entry of judgment consistent with this opinion.

Reversed and remanded.

VAIDIK, J., and MATHIAS, J., concur.