# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JOHN P. NICHOLS**
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**JASON A. SCHEELE**
**ERIC M. BLUME**
Fort Wayne, Indiana

**FILED**

Apr 10 2013, 9:12 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

HAROLD HAGGERTY,              )
                             )
    Appellant,              )
                             )
    vs.                     )      No. 77A01-1206-CT-293
                             )
HOOSIER ENERGY RURAL ELECTRIC )
COOPERATIVE, INC.; MEROM       )
GENERATING STATION,            )
                             )
    Appellee.               )

APPEAL FROM THE SULLIVAN SUPERIOR COURT
The Honorable Robert E. Springer, Judge
Cause No. 77D01-1010-CT-423

**April 10, 2013**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

STATEMENT OF THE CASE

Harold Haggerty ("Haggerty") appeals the trial court's order granting summary judgment to Hoosier Energy Rural Electric Cooperative, Inc. ("Hoosier Energy").

We affirm.

ISSUE

Whether the trial court erred by granting summary judgment to Hoosier Energy on Haggerty's negligence claim.

FACTS

Hoosier Energy owns and operates an electric generation facility known as the Merom Generating Station ("Station"), located in Sullivan County, Indiana. Hoosier Energy entered into a contract with C&K Industrial Services ("C&K"), Haggerty's employer. Hoosier Energy retained C&K to provide vacuuming, jetting and hydro blasting services at the Station as needed. One of these occasions was November 1, 2008.

On that evening, Haggerty, along with C&K coworker Matt Slaughter ("Slaughter"), worked at the Station vacuuming dust from certain areas. Slaughter vacuumed an elevated area using a broomstick handle taped to a four (4) inch hose. Haggerty was holding the excess hose below. Slaughter lost control of his end of the hose, which subsequently struck Haggerty in the face, causing pain and bleeding. Hoosier Energy did not own or control any equipment used by Haggerty or Slaughter that evening.

2

On October 27, 2010, Haggerty filed a complaint alleging negligence against Hoosier Energy. On January 12, 2012, Hoosier Energy filed its motion for summary judgment and designated as evidence the plaintiff's complaint and an affidavit from Hoosier Energy employee Chris Blunk. In response, Haggerty filed a Statement of Genuine Issue of Material Fact and a memorandum in opposition to Hoosier Energy's motion on February 29, 2012. The trial court conducted a hearing on March 27, 2012, and, after taking the matter under advisement, granted summary judgment to Hoosier Energy on May 17, 2012. Haggerty subsequently filed a motion to correct error, which was denied. This appeal ensues.

## DECISION

When reviewing a trial court's order granting summary judgment, we apply the same standard as that used in the trial court. *Kopczynski v. Barger*, 887 N.E.2d 928, 930 (Ind. 2008). Summary judgment is appropriate only where the designated evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth. . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (internal citations omitted). Summary judgment is rarely appropriate in negligence cases. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the

3

evidence." *Id.* "However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim." *Pelak v. Indiana Indus. Servs., Inc.*, 831 N.E.2d 765, 769 (Ind. Ct. App. 2005), *trans. denied.* A trial court's grant of summary judgment is "clothed with a presumption of validity" and an appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Williams*, 914 N.E.2d at 762. In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the designated evidence. *SMDfund, Inc. v. Fort Wayne–Allen Cnty. Airport Authority*, 831 N.E.2d 725, 728 (Ind. 2005), *cert. denied.*

Haggerty alleges Hoosier Energy committed the tort of negligence, which consists of the following elements: (1) a duty owed to Haggerty by Hoosier Energy; (2) a breach of that duty; and (3) injury to Haggerty resulting from Hoosier Energy's breach. *Rhodes*, 805 N.E.2d at 385. Hoosier Energy claims, and Haggerty concedes, that the general rule in Indiana is that a principal is not liable for the negligence of an independent contractor. *Bagley v. Insight Communications Co. L.P.*, 658 N.E.2d 584, 586 (Ind. 1995). However, there are five recognized exceptions to this rule. Haggerty claims that the following four exceptions apply: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; and (4) where the act to be

4

performed will probably cause injury to others unless due precaution is taken.[1]  *Becker v. Kreilein*, 770 N.E.2d 315, 318 (Ind. 2002).

Hoosier Energy contends that Haggerty's status as an independent contractor excludes him from taking advantage of exceptions one (1), three (3), and four (4).  Our Supreme Court specifically disagreed with this position, holding the following:

> The exceptions encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries.  Our objective is no less to protect workers who may be exposed to such risks than it is to protect non-employee third parties. The fact that partial remuneration through worker's compensation benefits may be available to an employee of an independent contractor does not diminish the policy rationale of providing an additional incentive to eliminate or minimize particular risks of injuries which arise from non-delegable duties.  Where a contractor's employer is responsible for a non-delegable duty, the contractor's injured worker should not discriminately be deprived of access to full compensatory damages but should have recourse equal to that of an injured bystander.  Likewise, to the extent that an injured worker's awareness of a job-related risk may be greater than that of a non-worker, substantial fairness and equal treatment are ensured because in a worker's action against the contractor's employer, any incurred risk on the part of a worker will be treated as "fault" and will be reflected in a proportionately reduced damages award under our comparative fault statute.

*Bagley*, 658 N.E.2d at 588.  We will address Haggerty's claims separately.

1. Intrinsically Dangerous Activity

Haggerty argues that the work he performed was intrinsically dangerous.  "Work is intrinsically dangerous if the risk of injury involved *cannot* be eliminated or *significantly* reduced by taking proper precautions."  *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 978 (Ind. 1998) (emphasis added).  The designated evidence reveals that Haggerty

---

[1]  The fifth recognized exception to the non-liability of a principal for an independent contractor's negligence is where the act to be performed is illegal.  Haggerty does not assert the applicability of this exception.

5

and Slaughter were vacuuming dust from areas of the Station. There is nothing inherently dangerous about vacuuming dust. Furthermore, according to the accident investigation report from C&K, Haggerty and Slaughter could have prevented Haggerty's injuries if they had recognized the vacuum hose was not secure. (App. at 70). We therefore conclude this exception does not apply.

2. Nuisance Activity

Haggerty next claims that the work he performed is the type that will create a nuisance. The key requirement of this exception is that the act at issue was of a type that will create a nuisance. *Becker*, 770 N.E.2d at 318. Our General Assembly has defined a nuisance as "[w]hatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind. Code § 32-30-6-6. Further, "[a] public nuisance affects an entire neighborhood or community, while a private nuisance affects only one individual or a determinate number of people." *Scheckel v. NLI, Inc.*, 953 N.E.2d 133, 138 (Ind. Ct. App. 2011). "A private nuisance arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property." *Id*. Again, there is nothing in and of itself about vacuuming dust that tends to create a nuisance. Further, there is nothing designated in the record to support the work being classified as a nuisance under precedent or statute. Accordingly, we also find that this exception does not apply.

6

### 3. Possible Injury to Others

Haggerty also asserts that the act performed would probably cause injury to others unless due precaution is taken. "The exception applies where, at the time of the making of the contract, a principal should have foreseen that the performance of the work or the conditions under which it was to be performed would, absent precautionary measures, probably cause injury." *Bagley*, 658 N.E.2d at 588.

Given that Haggerty and Slaughter worked for C&K, and Haggerty's injuries were a direct result of their use or misuse of C&K property, Hoosier Energy could not have reasonably foreseen nor prevented the accident. Again, Haggerty designates no evidence showing otherwise. This exception does not apply.

### 4. Specific Duty by Law or Contract

Haggerty argues that Hoosier Energy, through contract, had control of Haggerty and Slaughter, and thus was responsible for Haggerty's safety as well as properly training C&K employees on Hoosier Energy safety procedures. When interpreting a written contract, "it is the court's duty to ascertain the intent of the parties at the time the contract was executed as disclosed by the language used to express their rights and duties." *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1268 (Ind. Ct. App. 2002), *trans. denied*. We look to the contract as a whole by examining all of its provisions to determine whether a party is charged with a duty of care under a contract. *Id.* In addition, this Court has previously held that "the 'assumption by contract' exception to the general rule of non-liability is not triggered merely because [a contractor] may have a right to inspect and test the work, approve of the work and/or employees of the

7

independent contractor or require the contractor to follow company rules." *Armstrong v. Cerestar USA*, *Inc*., 775 N.E.2d 360, 371 (Ind. Ct. App. 2002), *trans*. *denied* (quoting *Merritt v. Bethlehem Steel Corp*., 875 F.2d 603, 607 (7th Cir. 1989)) (brackets in original).

Hoosier Energy and C&K executed a contract for certain work at the Station. The relevant portions of the contract read as follows:

24. <u>CONTRACTOR'S SUPERVISON AND SAFETY AT THE JOBSITE</u>

The Contractor shall furnish adequate management, supervisory, and technical personnel on the jobsite to ensure expeditious and competent handling of the work.

The Contractor shall be responsible for complete supervision and control of his subcontractors as though they were his own forces. Notice to the Contractor shall be considered notice to any affected subcontractor.

The Contractor's supervisory personnel shall coordinate the Contractor's and his subcontractors' programs for safety and accident prevention, fire protection, and security and property protection. The Contractor shall be solely responsible for the safety of its employees and agents. The Contractor shall comply with all state, federal, and local statutes, ordinances and regulations to insure the safety of its employees and agents, Owner's employees and agents, and other persons who may be on the work site. Contractor shall further comply with the provisions of any safety manuals or safety rules supplied by the Owner.

The Contractor shall conduct all operations under this Contract in a manner to avoid the risk of bodily harm and the risk of damage to any property. The Contractor shall promptly take necessary and adequate precautions against any condition which involves a risk of bodily harm or a risk of damage to any property. The Contractor shall continuously inspect all work, material, and equipment to discover and determine any unsafe condition and shall be solely responsible for the discovery, determination, and correction of any such condition. This requirement will apply continuously and not be limited to normal working hours.

The Contractor shall furnish safety equipment and enforce the use of such equipment by his employees and the employees of his subcontractors.

**Whenever, in the opinion of the Owner, the Contractor has not taken sufficient precaution for the safety of the public or the protection of the work to be constructed under this Contract or of adjacent structure or property, and whenever, in the opinion of the Owner, an emergency has arisen and immediate action is considered necessary, the Owner with or without notice to the Contractor may provide suitable protection by causing work to be done, and material to be furnished and placed. The cost of such work shall be borne by the Contractor, and if the same is not paid on presentation of the bills therefor, such costs may be deducted from any amounts due or to become due the Contractor. The performance of such emergency work shall not relieve the Contractor of responsibility for any damage which may occur.**

Haggerty's Br. at 6. Haggerty cites only the last paragraph of this clause to support his contention. However, when we read the contract as a whole, C&K's status as an independent contractor and its responsibility for Haggerty's safety and training is clear. Hoosier Energy did not contractually assume control of Haggerty while he worked at the Station, nor did they assume responsibility for his safety.

Haggerty finally argues that Hoosier Energy gratuitously assumed a duty to provide for his safety. Haggerty again relies on his partial citation of clause twenty-four (24) of the contract. Again, the entirety of the clause, as well as the contract itself, establishes C&K's responsibility for Haggerty's safety and training. Further, Haggerty has designated no evidence showing the affirmative conduct by Hooiser Energy required to gratuitously assume a duty. *See Butler v. City of Peru*, 733 N.E.2d 912, 917 (Ind. 2000).

9

Because Hoosier Energy successfully negated the element of duty in Haggerty's negligence claim, we find the trial court did not err in granting summary judgment in favor of Hoosier Energy.

Affirmed.

ROBB, C.J., and MAY, J., concur.